UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                         :

LEVITON MANUFACTURING CO., INC.,

               Plaintiff,

               v.

PASS & SEYMOUR, INC.,

               Defendant.

------------------------------------------------------------X

Case No. 17-46-BMC

**DEFENDANT PASS & SEYMOUR, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

██████████████

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................................... 4

III.    ARGUMENT .............................................................................................................. 9

        A.      Legal Standard ............................................................................................... 9

        B.      The No-Challenge and Enhanced-Damages Provisions in the Agreement are
                Unenforceable .............................................................................................. 10

                1.      The no-challenge provision is unenforceable in its entirety under Lear
                        and its progeny. ................................................................................. 10

                2.      The enhanced-damages provision is an unenforceable penalty. ............... 15

        C.      The No-Challenge Provision Is Inapplicable Here, Because Leviton Initiated
                Proceedings Against P&S for Patent Infringement ................................................ 17

IV.     CONCLUSION ......................................................................................................... 21

i

## TABLE OF AUTHORITIES

**Cases**

*Altman v. J.C. Christensen & Assocs., Inc.*,
  786 F.3d 191 (2d Cir. 2015) ................................................................................. 9

*Bates Advertising USA, Inc. v. 498 Seventh, LLC*,
  7 N.Y.3d 115 (2006) ........................................................................................... 15

*City of New York v. Brooklyn & Manhattan Ferry Co.*,
  238 N.Y. 52 (1924) ............................................................................................. 15

*Flex–Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001) .......................................................................... 14

*H.C. Schmieding Produce Co. v. Alfa Quality Produce, Inc.*,
  597 F. Supp. 2d 313 (E.D.N.Y. 2009) ................................................................. 9

*Idaho Potato Comm'n. v. M & M Produce Farm and Sales*,
  335 F.3d 130 (2d. Cir. 2003) .............................................................................. 11

*In re Lipper Holdings, LLC*,
  1 A.D.3d 170 (1st Dep't 2003) ........................................................................... 20

*Int'l Telemeter Corp. v. Teleprompter Corp.*,
  592 F.2d 49 (2d Cir. 1979) ................................................................................. 12

*JMD Holding Corp. v. Cong. Fin. Corp.*,
  4 N.Y.3d 373 (2005) ........................................................................................... 15

*Jones v. Dep't of Educ.*,
  2007 WL 2713343 (E.D.N.Y. Sept. 13, 2007) ..................................................... 9

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
  595 F.3d 458 (2d. Cir. 2010) .............................................................................. 19

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969) ...................................................................................... passim

*Leasing Serv. Corp. v. Justice*,
  673 F.2d 70 (2d Cir. 1982) ................................................................................. 15

*Miller v. Wolpoff & Abramson, L.L.P.*,
  321 F.3d 292 (2d Cir. 2003) ................................................................................. 9

*Nat'l Telecanvass Assocs., Ltd. v. Smith*,
  98 A.D.2d 796 (2d Dep't 1983) .......................................................................... 16

*NCS Plus Inc. v. WBR Mgmt. Corp.*,
  37 Misc. 3d 227 (Sup. Ct. 2012) ........................................................................ 17

*Rates Technology Inc. v. Speakeasy, Inc.*,
  685 F.3d 163 (2d Cir. 2012) .......................................................................... passim

*Sheppard v. Beerman*,
  18 F.3d 147 (2d Cir. 1994) ................................................................................... 9

*Wallace Clark & Co. v. Acheson Indus., Inc.*,
   532 F.2d 846 (2d Cir.1976) .......................................................................................... 12

*Warner-Jenkinson Co. v. Allied Chemical Corp.*,
   567 F.2d 184 (2d Cir. 1977) .................................................................................... 12, 13

*Willner v. Willner*,
   145 A.D.2d 236 (2d Dep't 1989) ................................................................................. 15

ACTIVE/89787294.3

CONFIDENTIAL – FILED UNDER SEAL

Defendant Pass & Seymour, Inc. ("P&S") hereby moves, pursuant to Federal Rule of Civil Procedure 12(c), for the entry of judgment on the pleadings in favor of P&S on Count 7 (Declaratory Judgment of Unenforceability or Inapplicability of Section 3 of December 2012 Agreement) of P&S's Answer and Counterclaims.

## I.  INTRODUCTION

This Court should grant P&S's Motion for Judgment on the Pleadings because Leviton has pleaded and admitted facts in its Complaint and its Answer to P&S's Counterclaims establishing that Sections 3.1 and 3.3(iii) and (iv) of the Settlement and License Agreement by and between Leviton Manufacturing Co., Inc. and Pass & Seymour, Inc., dated December 10, 2012 (Ex. 1)[1] ("the Agreement") are unenforceable or inapplicable here.

This case is a patent infringement dispute between Leviton and P&S involving ground-fault circuit interrupters ("GFCIs").  In May 2012, Leviton sued P&S in this Court[2] for alleged infringement of U.S. Patent Nos. 7,463,124 ("the '124 patent") and 7,737,809 ("the '809 patent")—the same two patents Leviton asserts in this case—and a third patent, U.S. Patent No. 7,764,151 ("the '151 patent"). D.I. 22 at ¶ 17; D.I. 24 at ¶ 17. Shortly after filing that district court litigation, Leviton targeted a P&S customer—Menard, Inc.—for alleged violation of a general exclusion order and cease-and-desist order that Leviton obtained from the U.S. International Trade Commission ("ITC") in a separate investigation involving non-P&S GFCIs. D.I. 22 at ¶ 18; D.I. 24 at ¶ 18.  Leviton's asserted basis for Menard's purported violation was its sale of P&S GFCIs. D.I. 22 at ¶ 18; D.I. 24 at ¶ 18.  Because of the risk of onerous civil penalties—and potential disruption of P&S's production and sales due to the threat of seizure at

---

[1] The exhibits cited in this brief are attached to the Declaration of Mark J. Abate in Support of Defendant Pass & Seymour, Inc.'s Motion for Judgment on the Pleadings, which is filed concurrently herewith.

[2] That case was *Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.* Case No. CV-12-2257.

CONFIDENTIAL – FILED UNDER SEAL

ports of entry—if Menards were found in violation, P&S entered into the Agreement, under which P&S received a royalty-bearing license from Leviton. Ex. 1 at §§ 2.1, 4.2.

Since the Agreement was consummated, two critical things have happened.  First, P&S invested substantial time, effort, and money redesigning its GFCI products to ensure that they are outside the scope of Leviton's patents.  Thus, P&S has stopped paying royalties to Leviton on its redesigned, non-infringing GFCIs.  Second, patent claims similar to those that Leviton now asserts against P&S here have been invalidated, including certain claims of the '124 Patent. D.I. 22 at ¶ 6; D.I. 24 at ¶ 6.

Nevertheless, Leviton now seeks an unlawful extension of its patent grant by attempting to force P&S to pay Leviton royalties that are not due under the Agreement.  Realizing that its patents cannot withstand the scrutiny of a validity challenge, Leviton tried to dissuade P&S from making such a challenge in this case by invoking Section 3.3 of the Agreement and alleging that if P&S challenges the validity or enforceability of Leviton's patents, any royalties payable under the Agreement double from ▬▬▬▬▬ to ▬▬▬▬▬. *See* Ex. 1 at § 3.3.  P&S moves for judgment on the pleadings that aspects of Section 3 of the Agreement, including Section 3.3, are either unenforceable or inapplicable here.

The no-challenge clause of the Agreement in Sections 3.1 and 3.3 is unenforceable under the Supreme Court's decision in *Lear, Inc. v. Adkins,* 395 U.S. 653 (1969) and the Second Circuit's decision in *Rates Technology Inc. v. Speakeasy, Inc.*, 685 F.3d 163 (2d Cir. 2012), because the parties entered into the Agreement before meaningful discovery took place in the 2012 patent litigation.  Together, *Lear* and *Rates* make clear that absent significant discovery before the settlement of a patent litigation, a no-challenge clause in a patent litigation settlement

CONFIDENTIAL – FILED UNDER SEAL

agreement is unenforceable because of the public's overwhelming interest in discovering and challenging invalid patents and ending wrongful patent monopolies.

Even if the no-challenge clause were enforceable under *Lear* and *Rates*, the Agreement's enhanced-damages (double-royalty) provisions in Section 3.3(iii) and (iv) are unenforceable under New York law because these provisions inflict a penalty designed to dissuade P&S from challenging the validity or enforceability of Leviton's patents. Indeed, the doubling of the royalty ▮ called for by the clause is out of proportion to the only injury to Leviton the clause can be meant to address: Leviton's anticipated attorney's fees. Thus, the Court should find the provision unenforceable.

Finally, because Leviton's Complaint contains a "claim of infringement" of the '124 and '809 patents against P&S, P&S is free to challenge the validity and enforceability of those patents without implicating the double-royalty (or enhanced-damages) penalty. *See* Ex. 1 at § 3.1. Leviton's attempt to avoid this situation by nominally drafting the Complaint as one for breach of contract clearly fails as it alleges infringement of Leviton's patents by P&S at least *39 times*. Despite the substance of Leviton's infringement claims, Leviton contends that its self-serving characterization of its Complaint as one of breach of contract is sufficient to implicate the enhanced-damages (double-royalty) provisions of the Agreement. As explained below, not only is Leviton's hyper-technical reading of the Agreement absurd and unworkable, but it also is at odds with the plain language of the Agreement. The Agreement lacks any mention of "causes of action" or "patent damages." Rather, it gives P&S the right to challenge the validity of the Leviton patents if Leviton makes a "claim of infringement of one or more of the Leviton Licensed Patent Rights against P&S," i.e., if Leviton contends that P&S infringes one of the

CONFIDENTIAL – FILED UNDER SEAL

licensed Leviton patents. *See* Ex. 1 at § 3.1. The Complaint is riddled with Leviton's claims of infringement against P&S.

Accordingly, for the reasons expressed above and explained more fully below, this Court should grant P&S's motion for judgment on the pleadings of Count 7 of P&S's Counterclaim.

## II.     STATEMENT OF FACTS

P&S and Leviton are the two largest players and direct competitors in the United States market for GFCIs.  P&S pioneered GFCI receptacles in the early 1970s and since then P&S has been at forefront of the development and improvement of GFCIs. *See* D.I. 22 at ¶ 13. This lawsuit is another attempt by Leviton to pressure P&S to pay royalties on its patent portfolio.

Leviton began its enforcement against P&S on May 8, 2012, when Leviton filed a lawsuit in the United States District Court for the Eastern District of New York (Case No. CV-12-2257) alleging that P&S infringed the '124 patent, the '809 patent, and the '151 patent (the "2012 Litigation").  *Id.* at ¶ 17; D.I. 24 at ¶ 17.  Leviton filed that lawsuit shortly after the United States International Trade Commission ("ITC") issued in its Investigation No. 337-TA-739 an April 27, 2012 general exclusion order prohibiting entry into the United States of ground fault circuit interrupters and products containing the same that infringe one or more of claims 1–4, 6, 8–11, 13, 15-16, 35–37, 39, and 41–46 of the '809 patent.  D.I. 22 at ¶ 16; D.I. 24 at ¶ 16.  Importantly, P&S GFCIs were not accused of infringement (or determined to be infringing) in the ITC, and P&S was neither a respondent nor a participant in the investigation.[3]  *Id.*

Nevertheless, on August 29, 2012, Leviton initiated an enforcement proceeding at the ITC alleging that P&S customer, Menard, Inc., was in violation of the cease-and-desist order due

---

[3] The ITC held and the Court of Appeals for the Federal Circuit affirmed that claims of the '124 patent generally directed to separating line, load and face conductors when a GFCI is in the tripped state (such that the conductors are electrically isolated) are invalid. D.I. 22 at ¶ 6; D.I. 24 at ¶ 6.

ACTIVE/89787294.3

**CONFIDENTIAL – FILED UNDER SEAL**

to Menard's sales of P&S's GFCIs.  D.I. 22 at ¶ 18; D.I. 24 at ¶ 18.  P&S intervened because of the potential for substantial civil penalties against Menards, as well as disruption of P&S's production and sales due to the threat of seizure at ports of entry.  D.I. 22 at ¶¶ 18–19; D.I. 24 at ¶¶ 18–19.  P&S was under tremendous economic pressure to resolve the disputes quickly.  On December 10, 2012, P&S and Leviton entered into the Agreement settling both the 2012 Litigation and the enforcement proceeding against Menard at the ITC.  D.I. 22 at ¶ 19; D.I. 24 at ¶ 19.  Under the Agreement, P&S, without admitting infringement or validity of any patent, agreed to pay a royalty on sales of certain of its GFCIs in exchange for a license to P&S for the '124 patent, the '809 patent, and the '151 patent.  *See* Ex. 1 at § 4.2.

P&S has at all times paid Leviton royalties due under the Agreement.  Specifically, P&S has paid and continues to pay Leviton royalties under the agreement on P&S's 1596 model GFCI.  But since entering into the Agreement P&S also has invested substantial resources in significantly and materially redesigning its GFCIs.  P&S's newer 1597 model GFCIs contain redesigned components, including a redesigned reset mechanism and electrical contact structure for establishing electrical continuity between the line conductor, the load conductor, and the user-accessible load (or face) conductor.  P&S's redesign purposefully avoids infringement of Leviton's patents.  Because P&S's 1597 model GFCIs do not infringe any of the Leviton patents covered by the Agreement, including the '124 patent and the '809 patent asserted here, P&S does not owe any royalties to Leviton for the sale of those GFCIs.

In a letter dated January 19, 2016, Leviton notified P&S (through its parent company Legrand North America, LLC) that "[i]n reviewing the recent 2015 Q4 royalty report provided pursuant to the Settlement and License Agreement dated October 15, 2012 (sic) (the 'License'), it has come to our attention that those products corresponding to the catalog numbers listed in the

CONFIDENTIAL – FILED UNDER SEAL

attached GFCI brochure pages (the 'Products') were omitted." D.I. 22 at ¶ 28.  Specifically,

Leviton stated that it had "examined a product sample listed in the attached (Cat. No. 1597TRW)

and it is not apparent how these items avoid the licensed patent claims." *Id.*  P&S's products

corresponding to the catalog numbers listed in the brochure attached to Leviton's January 19,

2016 letter were P&S's 1597 and 2097 series GFCIs. *Id.*  Leviton concluded the January 19,

2016 letter by demanding that P&S "provid[e] [Leviton] with an updated royalty report from first

date of sales of these items." *Id*.  On January 28, 2016, Leviton sent a follow-up letter to P&S

regarding P&S's 2015 Q4 royalty payment. *Id.*

On February 2, 2016, P&S (through an in-house attorney of its parent company Legrand

North America, Inc.) informed Leviton that "[t]he catalogue page referenced in your letter, and

later forwarded, features P&S's latest generation GFCI with self-test feature/functionality. This

novel design is not subject to the license agreement, as it purposely avoids infringement of

potentially relevant Leviton patents." *Id.* at ¶ 29.  Moreover, P&S stated that "this device

embodies at least the same new design elements reviewed by your counsel leading up to the

Termination of Advisory Opinion Proceedings circa April 2014." *Id.*  P&S concluded the letter

by stating, "For each of the foregoing reasons, the current P&S self-test GFCI is not subject to

any royalty requirement." *Id.*

On April 12, 2016, Leviton sent another letter to P&S addressing what it called "P&S's

failure to pay royalties on certain self-test GFCIs pursuant to the Settlement and License

Agreement, dated December 10, 201[2]." *Id.* at ¶ 30.  The April 12, 2016 letter also stated that

"Leviton considers P&S's refusal to pay royalties on this 'new design' as a breach of contract"

and "request[ed] a meeting of senior executives within thirty (30) days of this letter." *Id.*

CONFIDENTIAL – FILED UNDER SEAL

On May 11, 2016, senior executives at P&S and Leviton met to discuss the GFCIs that Leviton allege infringe its patents.  *Id.* at ¶ 31.  At the May 11, 2016 meeting Leviton again alleged that P&S's failure to pay royalties on P&S's 1597 model GFCIs was a breach of contract, thus asserting (if only by implication) that Leviton believes P&S is infringing the patents-in-suit. *Id.*

A one-day mediation was held on July 13, 2016 between P&S and Leviton.  *Id.* at ¶32. The parties were unable to resolve their dispute at the mediation.  *Id.*  Almost six months after the parties' one-day mediation, Leviton filed this action against P&S.  *Id.*

Although styled as a claim for breach of contract, the text, format and substance of the Complaint leave no doubt that "Leviton [has initiated] legal … proceedings against P&S … for infringement" of the Leviton patents and has clearly articulated a "claim of infringement."  *See* Ex. 1 at § 3.1.  Indeed, the core allegation in the Complaint—*without which Leviton would fail to state any cause of action*—is that P&S's 1597 GFCIs infringe the '809 and '124 patents.  Not only does Leviton actually allege that P&S infringes its patents *33 times* in the Complaint, but Leviton also buoys those allegations with the traditional, detailed comparison of the P&S GFCI receptacles to the claims of the '809 and '124 patents, complete with full color, annotated drawings of P&S GFCI receptacles, that are part and parcel of a patent infringement complaint. *See e.g.*, D.I. 1 at ¶ 24.  Specifically, the Complaint alleges that P&S's 1597 model GFCIs "would infringe at least claims 23, 24, 32, 33, 39, and 40 of the '124 patent and claims 48, 49, 52, 57, 59, 60, 61, and 62 of the '809 patent in the absence" of the Agreement.  *Id.* at ¶ 23.  In fact, the only thing that distinguishes Leviton's case from a clear complaint alleging patent infringement is that Leviton, for purely tactical reasons, chose not to include a "count" for patent infringement.  That is merely a hollow attempt by Leviton to have its cake and eat it too.  By

CONFIDENTIAL – FILED UNDER SEAL

stylizing the Complaint as one for breach of contract, Leviton hopes to box P&S into a corner

where P&S can only mount a non-infringement defense, while shielding its vulnerable patents

from the assertion of an invalidity defense.

Leviton meekly springs this trap in the antepenultimate paragraph of the Complaint:

> Should P&S challenge the validity or enforceability of any claim
> of the "Leviton Licensed Patent Rights," as that term is defined in
> the Settlement and License Agreement, in this action or in any
> other forum or manner, [Leviton seeks an] order and award of
> specific performance that P&S's royalty obligation doubles from
> the point at which such validity challenge is made and going
> forward as required by Section 3.3 of the Settlement and License
> Agreement.

D.I. 1 at p. 42.  Section 3.3 states that "during the pendency of that Patent Challenge (regardless

of whether P&S withdraws from any Patent Challenge if the Patent Challenge continues without

P&S), the royalty ███ in Article IV shall be increased [from ████████] to ████████████."

Ex. 1 at § 3.3(iii)-(iv).  On the other hand, Section 2.13 specifically allows P&S to raise "any

defense against a claim of patent infringement brought by Leviton." *Id.* at § 2.13.  Similarly,

Section 3.1 states, "Nothing in this Agreement shall prevent P&S … from raising any and all

affirmative defenses, claims and counterclaims if Leviton should bring any claim of infringement

of one or more of the Leviton Licensed Patents against P&S." *Id.* at § 3.1.  Accordingly, if the

Court finds that Leviton's Complaint asserts "a claim of patent infringement" against P&S,

Section 3.3 would not apply.

Because P&S has not paid royalties for its redesigned model 1597 GFCIs, the gravamen

of Leviton's allegations is that P&S's sale of the 1597 GFCIs infringes the '124 and '809

patents.  P&S denies those allegations and has counterclaimed for declaratory judgment that the

asserted claims of the '124 patent and '809 patent are not infringed, invalid, or unenforceable.

P&S also has counterclaimed for declaratory judgment that claims of another Leviton patent,

8

CONFIDENTIAL – FILED UNDER SEAL

U.S. Patent No. 7,764,151, which Leviton previously asserted against P&S is not infringed, invalid, or unenforceable.

## III.    ARGUMENT

### A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A dismissal under Rule 12(c) "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *H.C. Schmieding Produce Co. v. Alfa Quality Produce, Inc.,* 597 F. Supp. 2d 313, 315 (E.D.N.Y. 2009) (internal citations omitted).

The standard for deciding a Rule 12(c) motion is the same for reviewing a motion to dismiss brought pursuant to Rule 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). To succeed, the moving party must show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *Altman v. J.C. Christensen & Assocs., Inc.,* 786 F.3d 191, 193 (2d Cir. 2015).

In evaluating a motion for judgment on the pleadings, a court may consider the "pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings." *Jones v. Dep't of Educ.*, No. 05-CV-3075, 2007 WL 2713343, at *3 (E.D.N.Y. Sept. 13, 2007). A court may also consider "matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." *Id.*

CONFIDENTIAL – FILED UNDER SEAL

**B.** **The No-Challenge and Enhanced-Damages Provisions in the Agreement are Unenforceable**

The Complaint contends that:

> Should P&S challenge the validity or enforceability of any claim of the 'Leviton Licensed Patent Rights,' as that term is defined in the Settlement and License Agreement, in this action or in any other forum or manner, [Leviton is entitled to an] order and award of specific performance that P&S's royalty obligation doubles from the point at which such validity challenge is made and going forward as required by Section 3.3 of the Settlement and License Agreement.

D.I. 1 at p. 42. While Leviton references only Section 3.3 of the Agreement, its argument necessarily implicates Section 3.1. In Section 3.1, P&S "agree[d] not to challenge the validity and/or enforceability of any claim encompassed by Leviton Patent Rights." Ex. 1 at § 3.1. The effect of these provisions is to prevent P&S from challenging the validity of the Leviton's patents. In that regard, they are unenforceable under the Supreme Court's decision in *Lear,* 395 U.S. at 653. Moreover, even if the no-challenge clause was not unenforceable under *Lear*, the enhanced-damages component of Section 3.3(iii) and (iv) would be unenforceable under New York law as a penalty.

**1.** **The no-challenge provision is unenforceable in its entirety under *Lear* and its progeny.**

The threshold question before the Court is whether the no-challenge clause of an agreement settling a patent infringement litigation, entered into before meaningful discovery took place in that litigation, is enforceable. Second Circuit law—as opposed to Federal Circuit law—governs this inquiry. *Rates*, 685 F.3d at 167. Although this appears to be a matter of first impression in the Second Circuit, the relevant case law establishes that the question must be answered in the negative.

The analysis starts with the Supreme Court's decision in *Lear, Inc. v. Adkins*. In *Lear*, the Court weighed the enforceability of the doctrine of license estoppel—under which a licensee

10

CONFIDENTIAL – FILED UNDER SEAL

of intellectual property recognizes the validity of the matter in which it has obtained a license—in the patent context.  The Court began by acknowledging the competing interests that arise when one seeks to invoke license estoppel to prevent a patent challenge.  395 U.S. at 668.  On the one hand, the Court observed that license estoppel was, at its core, a contract concept, which prevented a licensee from repudiating its prior contract simply because its interests subsequently change.  *Id.*  However, while recognizing the importance of contract law, the *Lear* Court also recognized, in the patent context, the competing "public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain."  *Id.* at 670.  The Court further recognized that "[licensees] may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery."  *Id.*  Weighing these competing concerns against each other, the *Lear* Court found that the public interest tipped in favor of allowing licensees to challenge patents because "if they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification."  *Id.*

Although *Lear* concerned only the doctrine of license estoppel, courts view it as establishing a balancing test for determining the enforceability of agreements not to challenge patents by weighing the public interest in rooting out invalid patents against competing contract policies.  *See Idaho Potato Comm'n. v. M & M Produce Farm and Sales,* 335 F.3d 130, 135 (2d. Cir. 2003).  In the Second Circuit, whether a no-challenge clause is enforceable largely depends on the progress of the underlying patent dispute, and more specifically, whether the licensee had a meaningful opportunity to evaluate the strength of the patent-in-suit.  *Rates*, 685 F.3d at 169–171.  In deciding this, the *Rates* court detailed the relevant history of post-*Lear* cases, placing them along the resulting continuum.

11

CONFIDENTIAL – FILED UNDER SEAL

On one end, a patent litigation may be resolved by consent decree, following litigation between the parties.  The Second Circuit has found that "such decrees estop future challenges to a patent's validity."  *Id.* at 169 (citing *Wallace Clark & Co. v. Acheson Indus., Inc.*, 532 F.2d 846, 849 (2d Cir.1976), et al.).  This is because consent decrees are entered into after discovery and, unlike private settlement agreements, receive the scrutiny of the court.  *Rates,* 685 F.3d at 169–171.  This case does not involve a consent decree.

On the other end of spectrum, a patent dispute can be settled prior to litigation.  This was the scenario in *Rates*, where the court held the no-challenge clause was unenforceable.  The Second Circuit explained that "[i]n these circumstances, patent owners eager to avoid future challenges to their (possibly invalid) claims to a monopoly have a strong incentive to 'couch licensing arrangements in the form of settlement agreements' by including recitals in their agreements declaring that the patent is valid."  *Id.* at 171.  Accordingly, "[i]f no-challenge clauses in pre-litigation agreements were held to be valid and enforceable, *Lear*'s strong policy 'favoring the full and free use of ideas in the public domain' could be evaded through the simple expedient of clever draftsmanship."  *Id.*

Between the two ends of the spectrum, patent disputes can be resolved after litigation commences but without the imprimatur of a resulting consent decree.  *Id.* at 169.  The only two cases from the Second Circuit that fall into this category, *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184 (2d Cir. 1977), and *Int'l Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 56–57 (2d Cir. 1979), held that a license does not preclude a patent validity challenge merely because it is called a settlement and entered into after the commencement of

12

CONFIDENTIAL – FILED UNDER SEAL

litigation.  *Rates* at 169.[4]  Although neither case involved a contract with a no-challenge provision, the rational supporting *Lear* and *Rates* require that the no-challenge clauses in Sections 3.1 and 3.3(iii) and (iv) be deemed unenforceable under *Lear* because this case falls between the facts of *Rates* and *Warner-Jenkinson*.

Here, the licensee, P&S, neither received nor conducted meaningful discovery before the 2012 Litigation settled.  *See* D.I. 22 at ¶¶ 17, 21; D.I. 24 at ¶¶ 17, 21.  Nor did P&S have a full opportunity to evaluate the strength of the Leviton patents and make a considered decision to settle the litigation.  Rather, the parties settled the case less than four months after P&S answered the complaint.[5]  At that time, fact discovery was still in the early stages, neither party had taken any fact depositions, and P&S had just served its preliminary invalidity contentions.  *See* D.I. 22 at ¶¶ 17; D.I. 24 at ¶¶ 17.  The Court also had yet to hold a claim construction hearing, much less issue a claim construction decision, or set a trial date.  *See* D.I. 22 at ¶¶ 20; D.I. 24 at ¶¶ 20.  Thus, at the time of settlement, it was unclear how the Court would interpret the claims of the Leviton patents and therefore the relative strengths and weaknesses of noninfringement and invalidity defenses remained uncertain.  In short, there is no meaningful difference between the disposition of the 2012 Litigation and a dispute that settled pre-litigation.  Therefore, the holding in *Rates* applies here.

This view is supported by *Lear* and *Rates*.  For example, in finding that *Lear* applied in pre-litigation contexts, even where the parties styled their agreement as a settlement, and not merely a license, the *Rates* court acknowledged that to hold otherwise would be to subjugate

---

[4] The *Warner-Jenkinson* court suggested that in a case where a no-challenge provision did exist "a court *may* feel that effect should be given to such provisions."  567 F.2d at 188 (emphasis added).  However, as discussed below, the *Rates* court questions that possibility.

[5] In the 2012 Litigation, P&S answered the complaint on August 24, 2012.  The parties filed a Joint Stipulation of Dismissal on December 13, 2012.

ACTIVE/89787294.3

CONFIDENTIAL – FILED UNDER SEAL

"*Lear*'s strong policy favoring the full and free use of ideas in the public domain" to "the simple expedient of clever draftsmanship." *Rates*, 685 F.3d at 171.  That concern would not diminish if the Court were to allow Leviton to avoid *Lear* simply by having the foresight to file a lawsuit before immediately seeking to obtain a settlement.  Instead, as *Rates* indicates, the concerns expressed in *Lear* can be addressed only where the licensee had engaged in meaningful discovery prior to entering the settlement.  *Id.* at 172.  *Rates* provided two reasons why it is more relevant that meaningful discovery occurred than the often (as here) superficial fact that a litigation was filed:

> First, it suggests that the alleged infringer has had a full opportunity to assess the validity of the patent, and is therefore making an informed decision to abandon her challenge to its validity. Second, the fact that parties have conducted discovery is evidence that they had a genuine dispute over the patent's validity, and that the patent owner is not seeking to prevent its monopoly from being challenged by characterizing ordinary licensing agreements as settlement agreements.

*Id.*[6]  Without this, it is simply "too easy to 'muzzle' licensees".  *Id.*

In summary, the Second Circuit makes clear that when balancing the competing interests of contract rights against the public interest in discovering invalid patents, the scale tips to contract rights only when the licensee had a meaningful opportunity to consider the likelihood of successfully challenging the patent, i.e., after meaningful discovery.  To find otherwise would be to pave the most obvious path for all future patent holders to avoid *Lear*—simply file a patent litigation before negotiating the settlement and license.  On the other hand, a ruling that invalidates no-challenge clauses entered into before meaningful discovery occurred will ensure

---

[6] *See also Rates,* 685 F.3d. at 174 ("The Federal Circuit's earlier decision in *Flex–Foot*[, *Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001)], holding that no-challenge clauses are enforceable if they are entered into once an 'an accused infringer has challenged patent validity, [and] has had an opportunity to conduct discovery on validity issues,' 238 F.3d at 1370, seems to us to strike a more plausible balance between the policies of patent law articulated in Lear and policies favoring the resolution of disputes.").

14

**CONFIDENTIAL – FILED UNDER SEAL**

that those members of the public with a sufficient economic interest in challenging patents are

not muzzled by "would-be monopolists without need or justification." *Lear*, 395 U.S. at 670.

Therefore, the Court should hold the no-challenge clause of Section 3 of the Agreement

unenforceable.

**2.      The enhanced-damages provision is an unenforceable penalty.**

Assuming this Court finds the no-challenge clause enforceable under *Lear*, the Court

should nevertheless decide that the enhanced-damages clause in Section 3 is an unenforceable

penalty under New York law. *See Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982)

("[T]he law is clear that contractual terms providing for the payment of a sum disproportionate to

the amount of actual damages exact a penalty and are unenforceable.").  A liquidated damages

provision is an unenforceable penalty where either the actual damages were "readily

ascertainable at the time the contract was entered into or that the liquidated damages were

conspicuously disproportionate to foreseeable or probable loss." *See id; see also Bates*

*Advertising USA, Inc. v. 498 Seventh*, *LLC*, 7 N.Y.3d 115 (2006); *JMD Holding Corp. v. Cong.*

*Fin. Corp.*, 4 N.Y.3d 373 (2005).  Although P&S bears the burden of establishing that Section

3.3 of the Agreement contains an improper penalty, where there is doubt as to whether a

provision constitutes an unenforceable penalty or a proper liquidated damage clause, it should be

resolved in favor of a construction which holds the provision to be a penalty.  *Willner v. Willner*,

145 A.D.2d 236, 240–41 (2d Dep't 1989) (*citing City of New York v. Brooklyn & Manhattan*

*Ferry Co.*, 238 N.Y. 52, 56 (1924).  Under this rubric, the Agreement's enhanced-damages

clause in Section 3.3 is plainly an impermissible penalty.

As a starting point, we must ask: "what *damage* is the clause meant to address?"

Pursuant to the Agreement, in exchange for, among other things, a license in the Leviton patents,

P&S agreed to pay a negotiated royalty of ███████████.  *See* Ex. 1 at § 4.2.  However, if

15

CONFIDENTIAL – FILED UNDER SEAL

P&S challenges Leviton's patents, the royalty ■ doubles to ■ and remains at that ■

unless the Leviton Licensed Patent Rights[7] are found to be invalid or unenforceable or P&S

withdraws its challenge.  *Id*. at § 3.3(iii)-(iv).  The provision is not triggered by any other alleged

breach of the Agreement.  Thus, the provision does not compensate Leviton for any legally

protectable damage Leviton might suffer.  It is clearly just a mechanism to penalize P&S if it

challenges Leviton's patents and to dissuade P&S from doing so.  That is the very archetype of

an impermissible penalty.  *Nat'l Telecanvass Assocs., Ltd. v. Smith*, 98 A.D.2d 796, 797 (2d

Dep't 1983) (internal citation omitted).

At best, Leviton might argue that it settled the prior litigation to avoid attorney's fees,

which it will now incur.  But viewed in that light, the provision fails both of the tests for

identifying an unenforceable penalty.  First, while legal expenses may not be perfectly knowable,

to a party with as much litigation experience as Leviton they are certainly ascertainable.   There

are also other, more effective ways for Leviton to have protected itself from the costs of

litigation, if that was its true goal.  For example, Leviton could have included in the Agreement a

requirement that P&S pay Leviton's attorney's fees if it did not prevail in the litigation.

Second, even if the potential costs of prior patent litigation had boggled Leviton, the

enhanced-damages clause still would fail because it would entitle Leviton to compensation that

is cartoonishly disproportionate to any legal fees Leviton could have anticipated incurring at the

time of contracting.  By way of example, from 2012–2015, P&S paid royalties to Leviton of

approximately ■ per year.  Doubling that figure would imply a payment of

approximately ■ per year until the Leviton patents expire, which is clearly

---

[7] The Agreement defines "Leviton Licensed Patent Rights" to mean "those patent claims of the ■ Leviton Licensed Patents that do not include any limitation regarding ■, whether expressly recited as such or recited in terms of ■."

ACTIVE/89787294.3

CONFIDENTIAL – FILED UNDER SEAL

disproportionate to the legal fees Leviton could have reasonably anticipated at the time of contracting.  For this reason alone, the provision should be invalidated as a penalty. *See NCS Plus Inc. v. WBR Mgmt. Corp.*, 37 Misc. 3d 227, 235 (Sup. Ct. 2012).

What is more, within the structure of the Agreement, attorneys' fees are the only damages Leviton can plausibly articulate.  As mentioned above, the enhanced-damages clause only applies if P&S challenges the patent.  There is no other breach that implicates it.  Even then, the enhanced-damages provision does not apply if P&S invalidates all of the Leviton Licensed Patent Rights—presumably because otherwise the Agreement would impermissibly enforce an invalid patent.  Accordingly, by its own terms, the only potentially proper harm that the provision could be designed to address—and still only if one squints—are legal fees grossly out of proportion to the damages called for by the provision.  In short, that Section 3.3 is an impermissible penalty isn't even a close call.

**C.      The No-Challenge Provision Is Inapplicable Here, Because Leviton Initiated Proceedings Against P&S for Patent Infringement**

There is another, independent reason that the Court should find that the enhanced-damages provision does not apply here:  Leviton has "initiate[d] legal … proceedings against P&S … for infringement of the Leviton Licensed Patent Rights" and has brought a "claim of infringement of" the '124 patent and '809 patent against P&S.  *See* Ex. 1 at § 3.1.  It is beyond dispute that if Leviton makes a claim against P&S for patent infringement, P&S is free to assert a defense of invalidity without any risk of a double royalty.  Section 2.13 of the Agreement specifically states that:  "Nothing in this Agreement shall preclude P&S from raising any defense against a claim of patent infringement brought by Leviton." Ex. 1 at § 2.13.  Section 3.1 also states that: "Nothing in this Agreement shall prevent P&S or its Affiliates from … raising any

CONFIDENTIAL – FILED UNDER SEAL

and all affirmative defenses, claims and counterclaims if Leviton should bring any claim of infringement of one or more of the Leviton Licensed Patents against P&S." *Id.* at § 3.1

Leviton likely will argue that the Complaint "has not made any allegation of patent infringement under the Patent Statute" but rather asserts only a cause of action for breach of contract.[8]  Not only is that fundamentally untrue, but within the context and language of the Agreement, it also is irrelevant.

Indeed, the core allegation in the Complaint is that P&S 1597 model GFCI receptacles infringe the '124 patent and '809 patents.  Not only does Leviton actually claim that P&S infringes its patents *33 times* in the Complaint, (*See e.g.,* D.I. 1 at ¶¶  23, 34, 41, 48), but also Leviton buoys those critical allegations with detailed element-by-element comparisons of the P&S GFCI receptacles to the claims of the '124 patent and '809 patent, complete with full color, annotated drawings of P&S GFCI receptacles, that is typical of allegations in a complaint for patent infringement and in plaintiff's patent infringement contentions.[9]  (*See e.g.*, D.I. 1 at ¶ 24). In fact, not only has Leviton claimed that P&S infringes its patents, but also if those allegations were removed from the Complaint, Leviton's Complaint would fail to state a cause of action against P&S.

Moreover, contrary to Leviton's assertion, the Agreement does not make any reference to an "allegation of patent infringement under the Patent Statute" or "patent infringement damages."  Instead, the Agreement states that "[n]othing in this Agreement shall preclude P&S from raising any defense against *a claim* of patent infringement brought by Leviton." *See* Ex. 1

---

[8] Leviton will likely also argue that it is not seeking patent infringement damages.
[9] Leviton at least tacitly admits that Complaint contains claims of infringement of the '124 patent and '809 patent against P&S.  *See* D.I. 19 at 8 (arguing that Leviton "already provided [preliminary infringement contentions] in Complaint").

18

CONFIDENTIAL – FILED UNDER SEAL

at § 2.13 (emphasis added).  The term "claim" has several standard English meanings, one of which is "an assertion, statement or implication…." *Webster's Third New International Dictionary* (2002), Ex. 2, at 414.  Even under the more specialized legal definition, the term "claim" is clearly broad enough to encompass the allegations in Leviton's Complaint.  For example, of the several definitions provided in Black's Law Dictionary, the very first is "a statement that something yet to be proven is true." *Black's Law Dictionary* (10th ed. 2014), Ex. 3, at 301–03.  Under New York law, the Agreement's terms should be given their plan meaning, and Leviton's efforts to imply a different, narrower meaning should be rejected.  *See Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467–68 (2d. Cir. 2010).  Here, Leviton's Complaint unquestionably contains a "claim of infringement" of the '124 patent and '809 patent against P&S.  Leviton does so at least 33 times.  Thus, P&S may freely challenge the validity of the patent and the enhanced damages provision should be found not to apply.

Leviton's argument is also inconsonant with New York law because, if carried to its logical conclusion, it would produce absurd, commercially unreasonable results.  Not only would it allow Leviton to elevate form over substance, but it also would allow P&S to do the same.  For example, by Leviton's logic, P&S would be free to raise counterclaims for unfair competition or sham litigation based on the underlying contention that Leviton is fully aware that its patents are unenforceable and invalid and that it is therefore wrongful to seek to enforce them.  While those claims would each require P&S to prove the underlying invalidity of the Leviton patents, as Leviton's argument goes, because P&S would not have sought an explicit declaration that the Leviton patents are invalid or unenforceable, P&S would be acting within its contractual rights.  Simply to articulate that position is to expose how silly it is, and New York courts of have long

CONFIDENTIAL – FILED UNDER SEAL

rejected interpretations of contracts that result in such absurd results.  *See e.g.*, *In re Lipper Holdings, LLC,* 1 A.D.3d 170, 171 (1st Dep't 2003) (explaining that a contract should not be interpreted to produce a result that is absurd, unreasonable, or contrary to the reasonable expectations of the parties).

Rather, read as a whole, the Agreement sets out a clear framework for the parties' performance, and the consequences of various breaches.  For example, if P&S chose to stop paying royalties on Licensed Products, Leviton could sue for breach of contract.  If P&S responded by challenging the validity of the patents—and setting aside the other problems described in this brief—the enhanced-damages provision would prevent (or at least dissuade) P&S from counterclaiming or defending itself with a claim that the Leviton Patents were invalid or unenforceable.[10]  Those enhanced-damages provisions would similarly apply if P&S continued paying the royalty but simply initiated, or supported, a direct challenge to Leviton's patents.  However, the parties drafted the agreement in such a way that if P&S stopped paying royalties because, as here, it believed that it did not infringe Leviton's patents and that those patents were no longer valid or enforceable, and Leviton sued P&S based on its contention (i.e., claim) that its patents are valid and enforceable and that P&S was therefore infringing Leviton's patents, P&S would be free to challenge the validity of the Leviton patents without the encumbrance of the enhanced-damages provision.  Leviton agreed to this contractual framework and is now bound by it.

Finally, although P&S believes it is clear that the enhanced-damages provision in the Agreement is not implicated here, if the Court determines that the question is unclear and that the Agreement is ambiguous, P&S respectfully requests that the Court bifurcate this case and that

---

[10] Alternatively, Leviton could have terminated the Agreement and sued P&S for patent infringement.

**CONFIDENTIAL – FILED UNDER SEAL**

the parties first litigate the meaning of the Agreement before turning to the underlying substance of Leviton's Complaint.  This process would afford P&S the clarity necessary to determine what defenses are available to it, without running the risk of being liable for additional royalties.

## IV.     CONCLUSION

For the reasons set forth above, P&S respectfully requests that this Court enter judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in favor of P&S on Count 7 of P&S's Counterclaims.

Dated:   March 10, 2017                              Respectfully submitted,


                                                     */s/ Mark J. Abate*
                                                     Mark J. Abate
                                                     Calvin E. Wingfield Jr.
                                                     GOODWIN PROCTER LLP
                                                     The New York Times Building
                                                     620 Eighth Avenue
                                                     New York, New York  10018
                                                     Tel.: +1 212 813 8800
                                                     Fax.: +1 212 355 3333
                                                     mabate@goodwinlaw.com
                                                     cwingfield@goodwinlaw.com

                                                     *Counsel for Defendant Pass & Seymour, Inc.*