UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                  :

LEVITON MANUFACTURING CO., INC.,      :     Case No. 17-46-BMC
                  :

           Plaintiff,     :     **DEFENDANT PASS & SEYMOUR, INC.'S**
                  :     **OPPOSITION TO PLAINTIFF'S MOTION**
          v.          :     **FOR JUDGMENT ON THE PLEADINGS**
                  :

PASS & SEYMOUR, INC.,          :
                  :

          Defendant.    :     **ORAL ARGUMENT REQUESTED**
                  :
---------------------------------------------------------X

## Table of Contents

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    THE AGREEMENT DOES NOT BAR P&S'S PATENT MISUSE DEFENSE.............. 3

       A.    Legal Standard Applicable to Leviton's Release Argument................................... 3

       B.    P&S Could Not Have Asserted Patent Misuse Before the Date of the
             Agreement ......................................................................................................... 4

             1.    P&S Could Not Have Raised A Patent Misuse Defense Earlier ............... 5

             2.    P&S's Patent Misuse Defense Is Based On Events *After* the
                   Agreement ......................................................................................... 9

             3.    Leviton Ignores the Agreement's Carve-Out Provision ........................... 9

III.   BECAUSE P&S COULD NOT HAVE RAISED ITS PATENT MISUSE DEFENSE
       UNTIL AFTER THE PRIOR LITIGATION WAS SETTLED, RES JUDICATA DOES
       NOT APPLY ...................................................................................................... 10

IV.    P&S'S ANSWER PROPERLY PLED A PATENT MISUSE DEFENSE...................... 11

       A.    P&S Need Only State Its Patent Misuse Affirmative Defense ............................ 12

       B.    Forcing Licensees To Pay for Irrelevant Patents Is Misuse................................. 14

             1.    P&S Alleges Per Se Misuse................................................................. 14

             2.    Leviton's Coercive Package License Also Is Misuse Under The Rule
                   Of Reason......................................................................................... 16

       C.    Leviton's Assertion of the Patents-In-Suit Is a Misuse To Collect Royalties For
             Invalid Patents................................................................................................. 17

       D.    Leviton's Monopolization Of The Relevant Market Is Misuse ........................... 18

             1.    Leviton Has Impermissibly Broadened the Scope of the Patents-in-
                   Suit ................................................................................................. 19

             2.    *Capital One* Does Not Help Leviton .................................................. 19

V.     CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Long Island Power Authority*,
No. 14-CV-0444, 2015 WL 867064 (E.D.N.Y. February 27, 2015) ......................................12

*Am. Sec. Co. v. Shatterproof Glass Corp.*,
154 F. Supp. 890 (D. Del. 1957) ...........................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................3

*Augustine Medical, Inc. v. Progressive Dynamic*,
194 F.3d 1367 (Fed. Cir. 1999) ..........................................................................................8, 9

*Auto. Radio Mfg. Co. v. Hazeltine Research, Inc.*,
339 U.S. 827 (1950), overruled on other grounds by *Lear, Inc. v. Adkins*, 395
U.S. 653 (1969) ......................................................................................................................18

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) ............................................................................................13

*Bausch & Lomb, Inc. v. Allergan, Inc.*,
136 F. Supp.2d 166 (W.D.N.Y. 2001) ..................................................................................13

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
Civ. No. 10-1045, 2011 WL 6934557 (D. Del. Dec. 30, 2011)........................................12, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................3, 12

*Cadence Pharm., Inc. v. Paddock Labs., Inc.*,
C.A. No.11-733, 2012 WL 4565013 (D. Del. Oct. 1, 2012) ............................................12, 13

*Chevron Corp. v. Donziger*,
886 F.Supp.2d 235 (S.D.N.Y. 2012)......................................................................................12

*Commil USA, LLC v. Cisco Sys. Inc.*,
720 F.3d 1361 (Fed. Cir. 2013).............................................................................................18

*FTC v. Actavis, Inc.*,
133 S. Ct. 2223 (2013) ......................................................................................................17, 20

*Gemcor II, LLC v. Electroimpact Inc.*,
No. 11-CV-2520, 2012 WL 628199 (D. Kan. Feb. 27, 2012)................................................13

*Haley Paint Co. v. E.I. du Pont de Nemours & Co.*,
279 F.R.D. 331 (D. Md. 2012)........................................................................................20

*Hayden v. Paterson*,
594 F.3d 150 (2d. Cir. 2010)............................................................................................3

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006)........................................................................................................14

*Impression Products, Inc. v. Lexmark Intern. Inc.*,
No. 15-1189, 2017 WL 2322830 (May 30, 2017) .................................................................11

*Info. Superhighway, Inc. v. Talk Am., Inc.*,
274 F. Supp. 2d 466 (S.D.N.Y. 2003)........................................................................................4

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
Case No. 1:13-cv-00740, 2013 WL 6682981 (E.D. Va., Dec. 18, 2013) .........................19, 20

*Kelly v. United States*,
809 F. Supp. 2d 429 (E.D.N.C. 2011).........................................................................................12

*Locafrance U. S. Corp. v. Intermodal Sys. Leasing, Inc.*,
558 F.2d 1113 (2d. Cir. 1977)........................................................................................4

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed. Cir. 1992)................................................................................11, 16

*NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*,
105 F.3d 72 (2d. Cir. 1997)........................................................................................10

*Princo v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010)........................................................................................17

*R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)................................................................................11, 14

*Robbins v. City of New York*,
17 CV 2229, 2017 WL 2274975........................................................................................20

*Saratoga Harness Racing v. Veneglia*,
No. 94-CV-1400, 1997 U.S. Dist. LEXIS 3566 (N.D.N.Y. Mar. 18, 1997) ..........................12

*Scott v. WorldStarHipHop, Inc.*,
No. 10 Civ. 9538, 2012 WL 5835232 (S.D.N.Y. Nov. 14, 2012) ...........................................12

*Serby v. First Alert, Inc.*,
   934 F. Supp. 2d 506 (E.D.N.Y. 2013) .............................................................3, 12

*Sibley v. Chocie Hotels Intern Inc.*,
   304 F.R.D. 125 (E.D.N.Y. 2015) ....................................................................3, 12

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d. Cir. 2001) ...............................................................................17

*Torres v. New York Methodist Hospital*,
   15 CV 1264, 2016 WL 3561705 ..........................................................................13

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*,
   329 U.S. 637 (1947) .............................................................................................17

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
   424 F.3d 1179 (Fed. Cir. 2005)................................................................14, 15, 16

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) .............................................................................................18

*United States v. Loew's, Inc.*,
   371 U.S. 38 (1962), overruled .......................................................................14, 15

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997).............................................................................11

*Whitserve v. GoDaddy.com, Inc.*,
   No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636 (D. Conn. Nov. 17, 2011) ...........13

*Zenith Radio Corp. v. Hazeltine Research*,
   395 U.S. 100 (1969)..............................................................................................14

## Other Authorities

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
   PROCEDURE §1274 (2013).....................................................................................12

FED. R. CIV. P. 8(a)........................................................................................................12

FED. R. CIV. P. 12(f)........................................................................................................3

Restatement (Second) of Judgments ..............................................................................10

## I.    INTRODUCTION

This Court should deny Leviton Manufacturing Co., Inc.'s ("Leviton's") motion for

judgment on the pleadings (D.I. 51.) because it is based on a distorted reading of the parties'

Settlement and License Agreement executed December 10, 2012 ("the Agreement")[1] and the

facts surrounding the Agreement and this action.  Leviton also asks the Court to address a highly

fact-specific question at the pleading stage and under an incorrect legal standard.

First, Leviton argues that the release contained in the Agreement bars Pass & Seymour,

Inc.'s ("P&S") patent misuse defense because it is based on or related to events occurring before

the parties executed the Agreement.  To make this point, Leviton focuses on the fact that the

International Trade Commission ("ITC") issued a decision invalidating certain Leviton patent

claims before the parties executed the Agreement.  But Leviton appealed the ITC decision, which

was not affirmed by the Federal Circuit until August 13, 2013—over nine months after the

parties executed the Agreement.  This final decision—holding claims broadly directed to a "four-

pole" GFCI design with no reset lockout limitation, just like the claims Leviton now asserts here

against P&S, invalid—is the factual fulcrum for P&S's patent misuse defense.  It was only after

the final decision of the Federal Circuit that P&S's contends that Leviton "[knew] or reasonably

should [have] know[n] that the asserted claims in the Complaint are invalid for at least similar

reasons as adopted by the Federal Circuit."  Before that date, P&S had no basis to allege patent

misuse against Leviton because Leviton reasonably could have believed that the ITC decision

would be reversed—an argument Leviton surely would have made had it been possible for P&S

to allege a patent misuse in the prior litigation.

---

[1] The Agreement resolved two then-pending actions brought by Leviton:  Case No. CV-12-2257 filed against P&S in the United States District Court for the Eastern District of New York, and an enforcement proceeding against P&S customer, Menard, Inc., related to ITC Investigation No. 337-TA-739.

More fundamentally, P&S could not have alleged patent misuse in the prior litigation because all previously asserted '809 patent claims and some previously asserted '124 patent claims recited a "reset lockout" limitation.  The ITC held that all claims reciting that limitation were not invalid.  None of the '809 patent claims Leviton asserts here were asserted in the disputes referenced in the release.  In other words, even if the ITC had invalidated the same patent claims that Leviton now asserts against P&S, Leviton's motion still would fail because Leviton never asserted those claims against P&S until *after* the parties executed the Agreement.

Moreover, Leviton ignores a critical limitation to the release, which states "████████████████████████████████████████████████████████████████████████████████████."  Agreement at § 2.13 (emphasis added).[2]  P&S pled patent misuse as an affirmative defense.  Thus, the release does not apply.

Leviton next argues that the doctrine of res judicata prevents P&S from asserting claims of patent misuse.  This argument is largely redundant of Leviton's release argument; the central question being whether the claim asserted in the subsequent action (i.e., here) was or could have been raised in the prior action.  Leviton concedes that res judicata applies only if that question is answered affirmatively.  But as explained herein, P&S could not have alleged patent misuse in a prior action against Leviton.  Accordingly, res judicata does not apply here.

Finally, Leviton asks the Court to analyze the merits of P&S's patent misuse defense at the pleading stage and under the incorrect legal standard.  As an initial matter, Leviton's motion for judgment on the pleadings under Rule 12(c) properly should be viewed as a motion to strike under Rule 12(f) because P&S raised patent misuse as an affirmative defense rather than as a

---

[2] Whether with the Complaint Leviton has brought a claim of patent infringement against P&S and thus allowing P&S to raise any defense it deems appropriate remains *sub judice* as part of the briefing on P&S's Motion for Judgment on the Pleadings (D.I. 25).  Thus, not only is Leviton's motion meritless, but also it is premature.

claim or counterclaim.  When deciding a motion for judgment on the pleadings under Rule 12(c),

courts employ "the same [plausibility] standard applicable to dismissals pursuant to Rule

12(b)(6)."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d. Cir. 2010) (internal citations omitted).

However, because Leviton is challenging P&S's affirmative defense of patent misuse, Rule 12(f)

applies.  That Rule provides that a court "may strike from a pleading any insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter."  The Rule 12(f) standard requires

that P&S state its defense (which it did) and that Leviton shows that P&S's patent misuse

defense cannot succeed under any circumstances (which Leviton cannot).  This Court and other

district courts have decided that the pleading requirements of *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not apply to affirmative

defenses.  *See, e.g., Sibley v. Chocie Hotels Intern Inc.,* 304 F.R.D. 125, 133 (E.D.N.Y. 2015);

*Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 515–16 (E.D.N.Y. 2013).  Thus, Leviton's

attempt to apply *Twombly*'s plausibility standard to P&S's patent misuse defense is wrong and

Leviton's motion should be denied because P&S has stated its defense as required by Rule 12(f).

Leviton's motion also fails because: (a) P&S has alleged facts establishing that the per se

misuse doctrine applies; (b) P&S has alleged all that is required to show patent misuse under the

rule of reason, including relevant markets and anticompetitive effects; and (c) substantively,

Leviton's monopolization of relevant markets is a proper basis for a misuse defense.

Accordingly, for at least these reasons, Leviton's motion for judgment of non-

infringement under Rule 12(c) should be denied.

## II.    THE AGREEMENT DOES NOT BAR P&S'S PATENT MISUSE DEFENSE

### A.    Legal Standard Applicable to Leviton's Release Argument

Leviton is correct that "settlement agreements are contracts and must therefore be

construed according to general principles of contract law." (Leviton Br., D.I. 54, at 3) (citing

3

*Tromp v. City of New York*, 465 Fed. Appx. 50, 51 (2d. Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d. Cir. 2002)).  When, as here, a release is signed by parties in roughly equivalent bargaining position, with ready access to counsel, if the language of the release is clear, the language employed generally indicates the parties' intent.  *See Locafrance U. S. Corp. v. Intermodal Sys. Leasing, Inc.,* 558 F.2d 1113, 1115 (2d. Cir. 1977).  However, "because the law looks with disfavor upon agreements intended to absolve [a party] from the consequences of his [wrongdoing], a release which purports to excuse a party from responsibility for misconduct is subject to the closest of judicial scrutiny."  *Info. Superhighway, Inc. v. Talk Am., Inc.*, 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003) (citations and alterations omitted).  Accordingly, "an ambiguous release may not form the basis for a motion to dismiss."  *Id.*

As discussed below, the plain language of the release establishes that it does not apply to P&S's patent misuse defense because it is a defense and not a claim, and because the defense concerns patent claims that were not asserted against P&S until after the parties executed the Agreement.  However, even if the Court disagrees, it still should deny Leviton's motion because there is sufficient indicia to question the scope of the release.

**B.  P&S Could Not Have Asserted Patent Misuse Before the Date of the Agreement**

Leviton argues that P&S cannot assert a patent misuse defense because P&S entered into a "broad general release" with the Agreement that included that defense.  (Leviton Br. at 3.)  But the language of the release shows otherwise:



Agreement at § 2.13; *see also id.* at § 3.1 (" ███████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ . . .."").

The plain text of the release establishes two dispositive points.  First, the release has no

application to P&S's patent misuse defense because ██████████████████████

███████████████████████████ .  *See, e.g., id.* at § 3.1 (████████████████

████████████████████████).  Second, even if the term "█████" includes

defenses—and it does not—it still would apply only to claims that both (1) "██████████

███████████████████████████████████████████████████

████████"; and (2) ██████████████████████████ .

If a claim was not or could not have been raised in those proceedings, it is irrelevant that

the claim relates to them.  Thus, the sole question before the Court is: did P&S raise or could

P&S have raised in the prior proceedings a defense of patent misuse based on the patents that

Leviton now asserts against P&S.  Clearly it could not.  First, Leviton asserted different claims

from the '809 and '124 patents against P&S in the prior litigation.  Second, P&S's patent misuse

defense is based on events that took place *after* the parties executed the Agreement:  the Federal

Circuit's affirmance of the ITC decision to invalidate certain Leviton patent claims broadly

directed to a "four-pole" GFCI design with no reset lockout limitation.

### 1.      P&S Could Not Have Raised A Patent Misuse Defense Earlier

The most notable thing in Leviton's motion is what is missing.  Leviton discusses at

length the ITC decision, its timing and its relationship to the Agreement but never mentions that

many of the patent claims Leviton currently asserts against P&S were not at issue in that dispute

or the prior litigation before this Court, as the following chart illustrates:

| Claims Asserted In This Case | Claims Asserted in the ITC | Claims Asserts in Prior EDNY Litigation |
|---|---|---|
| '809 Patent claims 48, 49, 52, 57, 59, 60–62 | '809 Patent claims 1–4, 6, 8–11, 13, 15–16, 35–37, 39, and 41–46 | '809 Patent claims 1, 4, 8, 13–16, 18, 21, 25, 30-32, 34, 35, 37, 40, 41, 44–46, 74, 77, 80 and 81 |
| '124 patent claims 23, 24, 32, 33, 39, and 40 | '124 patent claims 1–5, 7, 9–11, 13–17, and 23–26 | '124 patent claims 2, 3, 6, 10, 14, 15, 23, 24, 32, and 33 |

Unlike many of the patent claims that Leviton asserted against P&S previously, the patent claims asserted against P&S in this case recite very similar limitations and have nearly identical scope of those claims invalidated by the ITC.

| Claim 8 of '151 patent (held invalid by ITC and Federal Circuit) | Claim 23 of the '124 patent | Claim 48 of 809 patent |
|---|---|---|
| 8. A circuit interrupting device comprising: | 23. A circuit interrupting device comprising: | 48. A circuit interrupting device comprising: |
| a first electrical conductor capable of being electrically connected to a source of electricity; | a first electrical line conductor including an electrical line connection terminal accessible externally of said device and at least one electrical contact located internally of said device; | at least one lifter having a first opening defined therein and configured to move a first pair of electrical conductors including a phase and neutral in a first direction for contacting at least one of a second and third pair of electrical conductors for permitting electrical continuity between the first pair of electrical conductors and at least one of the second and third pairs of electrical conductors and in a second direction for breaking electrical continuity between at least two of the pairs of electrical conductors, wherein the first, second, and third pairs |
| a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor; | a second electrical load conductor including an electrical load connection terminal accessible externally of said device and at least one electrical contact located internally of said device; | |
| a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are | a third electrical face conductor including at least one user-accessible electrical socket connector terminal accessible to a user-installed connecting plug from the external face of | |

| Claim 8 of '151 patent (held invalid by ITC and Federal Circuit) | Claim 23 of the '124 patent | Claim 48 of 809 patent |
|---|---|---|
| electrically isolated from each other; | the device and at least one electrical contact located internally of said device; | of electrical conductors are electrically isolated from each other; |
| at least one movable bridge electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other; | at least one of the internally located electrical contacts of said first, second and third electrical conductors being movable between (a) a first spatial arrangement wherein said conductors are all electrically connected with each other and (b) a second spatial arrangement wherein said first, second and third electrical conductors are all electrically isolated from with each other; | at least one movable bridge comprising a first finger and a second finger, wherein the first finger is movable to electrically engage the second pair of electrical conductors and the second finger is movable to electrically engage the third pair of electrical conductors |
| a circuit interrupter configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and | an electrical fault sensor electrically coupled to at least one of said conductors, and

an electro-mechanical operator which is electrically coupled to said fault sensor and mechanically coupled to automatically effect movement of said at least one movable electrical contact from said first configuration to said second configuration upon the occurrence of an electrical fault sensed by said fault sensor. | a circuit interrupter configured to movably engage a latch having a second opening defined therein and positioned to substantially align with the first opening of the at least one lifter to move the at least one lifter in the second direction upon the occurrence of an electrical abnormality; and |
| a reset portion, including a reset button, a spring which biases the button outwardly, and a plurality of contacts, configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs | | |

Thus, P&S could not have alleged patent misuse based on the ITC decision in the parties' earlier EDNY litigation because (1) the vast majority of the claims asserted by Leviton in this case were not asserted by Leviton in the EDNY litigation and (2) the Federal Circuit did not affirm that claims with nearly identical scope as those that Leviton now asserts against P&S were invalid until after the parties executed the Agreement.

Anticipating this argument, Leviton retreats to the broader notion that a release is a "'waiver of all claims and causes of action arising under or by virtue of the contract and of all claims based upon events occurring prior to the date of the release'" and that because the ITC decision preceded the release, P&S has waived its patent misuse defense. (Leviton Br. at 5)(citing *Augustine Medical, Inc. v. Progressive Dynamic,* 194 F.3d 1367, 1372–73 (Fed. Cir. 1999)(internal citations omitted). Leviton's argument misses the point. Every release must be evaluated according to its specific terms, and the release in the Agreement applies only to claims that were or could have been raised in the parties' prior disputes. P&S's patent misuse defense is a response to a specific set of circumstances—Leviton asserting certain patent claims against P&S in view of the Federal Circuit finding very similar patent claims invalid *after* the parties' executed the Agreement. P&S could not have raised (and did not raise) patent misuse in the prior proceedings. For this reason, the case law Leviton cites is inapposite.

Leviton cites *Augustine Medical, Inc.* to allege that a general release covers conduct "related to any actions taken" before the date of an agreement. 194 F.3d at 1372–73. Here, however, the release is not a general release. Instead, the release in the Agreement is very narrowly tied to the parties' prior disputes. Although the release uses the phrase "███████" it does so conjunctively, acting as a limitation rather than an expansion of the release. Moreover, in *Augustine* the release specifically covered conduct that happened "after the date [of the

8

release] that are in substance repetitions of statements made by PDI prior to the date of this

Settlement Agreement that were at issue in the above-referenced litigation." *Id.* at 1369.

Notably, the release here contains nothing like that.[3]

### 2. P&S's Patent Misuse Defense Is Based On Events *After* the Agreement

Even if Leviton had asserted against P&S the same patent claims it does now in the prior

disputes, P&S still could not have raised its patent misuse defense until after the Federal Circuit

affirmed the ITC's decision invalidating certain Leviton patent claims. The crux of P&S's

argument is that the Leviton knows or should know that the claims it has asserted against P&S

are invalid. Before the Federal Circuit's decision, Leviton could reasonably have believed that

the ITC had erred in its analysis, and that the Federal Circuit would overturn it—and certainly

Leviton would have argued as much had P&S raised a patent misuse defense then. On the other

hand, P&S contends that once the Federal Circuit affirmed the ITC decision, Leviton knew or

should have known those claims and claims of similar scope were invalid. The Federal Circuit's

affirmance issued August 13, 2013—over nine months after the parties executed the Agreement.

### 3. Leviton Ignores the Agreement's Carve-Out Provision

Another reason to deny Leviton's motion is that the Agreement specifically allows P&S

to maintain "████████████████████████████████████████████

████████████████████████████████████████…."

(Agreement at § 3.1) Leviton has brought a claim of infringement against P&S. Leviton

disagrees. That issue remains *sub judice* as part of the briefing on P&S's Motion for Judgment

---

[3] P&S's patent misuse defense references Leviton's use of "serial litigation" as a tactic for preventing competition. Leviton argues that any complained-of litigation occurred before the release and thus is within its scope. P&S disagrees for the reasons discussed herein. Moreover, P&S's patent misuse defense references Leviton's litigation strategy for contextual background. P&S need not establish Leviton is a "serial litigator" to prevail on its patent misuse defense.

on the Pleadings (D.I. 25).  If the Court determines that within the meaning of the Agreement, Leviton has brought a claim against P&S for patent infringement, the Agreement's carve-out provision would nullify the release entirely and Leviton's motion would be moot.

### III.   BECAUSE P&S COULD NOT HAVE RAISED ITS PATENT MISUSE DEFENSE UNTIL AFTER THE PRIOR LITIGATION WAS SETTLED, RES JUDICATA DOES NOT APPLY

Leviton also argues that because the parties' previous EDNY litigation was dismissed with prejudice, P&S's patent misuse defense is barred by the doctrine of res judicata.  (Leviton Br. at 7–8.)  Res judicata applies when: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." (Leviton Br. at 7) (quoting *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d. Cir. 2000)).

P&S agrees with this uncontroversial recitation of the law.  However, "[t]he difficulty arises in determining when a second action involves the same cause of action as an earlier one." *NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 78 (2d. Cir. 1997) (citations omitted).  New York has adopted the Restatement (Second) of Judgments transactional approach to what constitutes a cause of action for res judicata purposes. *Id*.  "What constitutes a single transaction is a factual question to be determined 'pragmatically', based on factors such as 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations....'" *Id*. (citing Restatement (Second) of Judgments § 24(2)).

Here, as described above, P&S's defense is not part of the same "transaction" as those at issue in the prior litigations because it arises from conduct that did not occur until *after* the parties executed the Agreement, namely, Leviton seeking to enforce the specific patent claims asserted here.  Thus, res judicata does not apply to preclude P&S's patent misuse defense.

**IV.      P&S'S ANSWER PROPERLY PLED A PATENT MISUSE DEFENSE**

"Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." C.*R. Bard, Inc. v. M3 Sys., Inc*., 157 F.3d 1340, 1372 (Fed. Cir. 1998). "The courts have identified certain specific practices as constituting *per se* patent misuse, including so-called `tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *Va. Panel*, 133 F.3d at 869.

When a practice is not *per se* patent misuse, it may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect." *Id.* In those circumstances, the practice must be analyzed in accordance with the "rule of reason." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 706 (Fed. Cir. 1992), abrogated in part on other grounds by *Impression Products, Inc. v. Lexmark Intern. Inc.,* No. 15-1189, 2017 WL 2322830 (May 30, 2017). "Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Va. Panel*, 133 F.3d at 869 (citations omitted).

A.      **P&S Need Only State Its Patent Misuse Affirmative Defense**

Leviton incorrectly suggests that affirmative defenses are held to the same Rule 12(c)

plausibility standard as claims and counterclaims.  This Court has held that a defendant need

only state its affirmative defenses, in contrast to a claimant who must plead facts plausibly

showing that the law entitles him to relief under Rule 8(a)(2).  *See Serby,* 934 F. Supp. 2d at

515–16 ("This Court concludes that the pleading standards announced in *Twombly* do not apply

to affirmative defenses.  *Twombly* addressed the requirements of a pleading under Rule 8(a) of

the Federal Rules of Civil Procedure, which explicitly requires 'a short and plain statement of the

claim showing that the pleader is entitled to relief.'"); *Sibley,* 304 F.R.D. at 132-133 (E.D.N.Y

2015); *Allstate Ins. Co. v. Long Island Power Authority,* No. 14-CV-0444, 2015 WL 867064, at

*2 (E.D.N.Y. February 27, 2015).  Other district courts have held the same.[4]  Because Leviton

---

[4] *See, e.g., Chevron Corp. v. Donziger*, 886 F.Supp.2d 235, 266 n. 201 (S.D.N.Y. 2012)
(collecting cases); *Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538, 2012 WL 5835232, at *3
(S.D.N.Y. Nov. 14, 2012) (holding that plausibility standard does not apply to affirmative
defenses, and noting that "Rule 8(a)(2), [ ] which governs pleadings that state claims, requires
that pleadings 'show' the pleader's entitlement to relief. By contrast, Rule 8(c)(1), [ ] which
governs pleading affirmative defenses, only requires a party to 'state' the defense."); *Cadence
Pharm., Inc. v. Paddock Labs., Inc.*, C.A. No.11-733, 2012 WL 4565013, at *1 (D. Del. Oct. 1,
2012) ("[A] majority of the District Courts within the Third Circuit that have addressed the issue
have determined that the heightened pleading requirements of [*Twombly/Iqbal*] do not apply to
the pleading of affirmative defenses."); *Bayer Cropscience AG v. Dow AgroSciences LLC*, Civ.
No. 10-1045, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011) ("[T]his Court agrees with those
courts that have found *Twombly/Iqbal* inapplicable to affirmative defenses."); *Saratoga Harness
Racing v. Veneglia*, No. 94-CV-1400, 1997 U.S. Dist. LEXIS 3566, at *7-8 (N.D.N.Y. Mar. 18,
1997) ("[D]espite plaintiff's reliance on Rule 12(c), the Court will treat plaintiff's motion as one
to strike defendants' affirmative defenses pursuant to Rule 12(f)."); *Kelly v. United States*, 809 F.
Supp. 2d 429, 433 n.2 (E.D.N.C. 2011) (same); *Cf.* 5 CHARLES ALAN WRIGHT & ARTHUR R.
MILLER, FEDERAL PRACTICE AND PROCEDURE §1274 (2013) ("As numerous federal courts have
held, an affirmative defense may be pleaded in general terms and will be held to be sufficient,
and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the
nature of the defense.") (citations omitted); *id.* at § 1369 ("Federal Rule 12(c) should be read in
conjunction with . . . the Rule 12(f) motion to strike[.]"); *id.* at § 1367 (with respect to procedural
defects "asserted upon a Rule 12(c) motion, presumably the district court will apply the same
standards . . . as it would have employed had the motion been brought prior to the defendant's
answer . . . under Rule 12(f)").

challenges P&S's affirmative defense,[5] and not a claim or counterclaim, the Rule 12(f) motion to strike standard applies instead of the Rule 12(b)(6) plausibility standard.

Moreover, courts routinely deny motions to strike patent misuse affirmative defenses. *See, e.g., Cadence Pharm.*, 2012 WL 4565013, at *2; *Gemcor II, LLC v. Electroimpact Inc.*, No. 11-CV-2520, 2012 WL 628199, at *3 (D. Kan. Feb. 27, 2012) (denying motion to strike because "Electroimpact's patent misuse affirmative defense provides notice that [it] intends to defend this lawsuit on grounds of patent misuse"); *Whitserve v. GoDaddy.com, Inc.*, No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636, at *8–9 (D. Conn. Nov. 17, 2011) (denying motion to strike patent misuse defense because it "states a basis on which [defendant] plans to defend this lawsuit"); *Bausch & Lomb, Inc. v. Allergan, Inc.,* 136 F. Supp.2d 166, 168 (W.D.N.Y. 2001) (denying motion to strike patent misuse defense because "such motion are not favored"). Indeed, "motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Torres v. New York Methodist Hospital,* 15 CV 1264, 2016 WL 3561705, at * 14 (internal citations omitted). Because P&S's patent misuse affirmative defense provides fair notice to Leviton, the Court should deny Leviton's motion on that basis alone. *See, e.g.*, *Bayer*, 2011 WL 6934557, at *4 (denying motion to strike because "Defendant's affirmative defense provides fair notice under the liberal pleading standards of the Rule").

---

[5] Leviton recognizes that patent misuse is a defense and that P&S pled it as such. Leviton never alleges that P&S's patent misuse defense is, or should be, a counterclaim, which it is not. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997) (patent misuse is an affirmative defense).

**B.      Forcing Licensees To Pay for Irrelevant Patents Is Misuse**

**1.      P&S Alleges Per Se Misuse**

Leviton argues that *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005), held that "package licenses are not *per se* misuse." (Leviton Br. at 14.) Not so. The long-established rule is that a package license arrangement where the licensee must pay for unwanted items constitutes *per se* misuse. *United States v. Loew's, Inc*., 371 U.S. 38 (1962) (holding *per se* illegal arrangement where licensee were forced to pay fees for unwanted films), overruled in part on other grounds by *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42 (2006) (a patent does not in itself automatically prove market power); *C.R. Bard Inc.,* 157 F.3d at 1373 ("[C]lassic grounds of patent misuse [include] . . . tying or enforced package licensing[.]"); *Am. Sec. Co. v. Shatterproof Glass Corp.*, 154 F. Supp. 890, 894 (D. Del. 1957) (when "the licensor refused to grant a license under one or more of its patents unless a license was taken under all," it committed misuse); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 139 (1969) ("[P]atent misuse inheres in a patentee's insistence on a percentage-of-sales royalty, regardless of use, and his rejection of licensee proposals to pay only for actual use.").

Far from overruling this line of precedent, *Philips* recognized and adhered to it. The Federal Circuit took care to distinguish *Loew's*, observing that a monopolist patentee commits misuse if it conditions the patents-in-suit on paying for a license to irrelevant patents. *Philips*, 424 F.3d at 1188-89. The package license in *Philips* was not misuse only because the tied patents were added to the bundle for free. *Id.* ("In this case, unlike in *Loew's*, there is no evidence that a portion of the royalty was attributable to the patents that the Commission characterized as nonessential."). Here, P&S has alleged that "[t]he payments that Leviton extracts from licensors do not reflect the inherent value of the patents in Leviton's portfolio, which a licensee would pay in a competitive market. Rather, the payments reflect 'hold up'

value, resulting from Leviton's deliberate strategy of serial patent assertion." P&S Affirmative

Defenses at 26–27. Indeed, the Agreement includes licenses to three Leviton patents that do not

cover GFCIs and that Leviton never has asserted any P&S product infringes. P&S therefore has

alleged per se misuse under the longstanding law that *Philips* recognized.

Leviton cannot analogize its coercive patent tying to the portfolio licensing in *Philips*,

which concerned a procompetitive blanket license by a bona fide patent pool. *Philips*, 424 F.3d

at 1193. That pool engaged in efficient ex ante licensing, covering "all the patents needed to

practice a particular technology"—there, the making and selling of recordable CDs. *Id.* The

package included standard-essential and a small number of non-standard essential patents.

Importantly, *Philips* added the latter to the bundle for free (*id.* at 1190–91), which as noted

above, was critical to the Federal Circuit's decision that there was no per se misuse under "the

circumstances of [that] case." *Id.* at 1187.

Here, P&S's patent misuse defense alleges completely different circumstances. P&S

alleged that "unlike bona fide portfolio licensing, the model for Leviton's licensing campaign is

not based on the licensing of valid and valuable patent rights, but on hold-up threats." P&S

Affirmative Defenses at 26. Thus, because the bases on which *Philips* distinguished *Lowe's* (a

freely provided procompetitive patent pool and tied patents) are absent here, the per se misuse

rule applies.

Lastly, the Federal Circuit decided *Philips* based on a full evidentiary record. The court's

finding that Philips had not misused its patents was based on the fact that, "unlike in *Loew's*,

there is no evidence that a portion of the royalty was attributable to the patents that the

Commission characterized as nonessential" and that "[t]he evidence in this case . . . does not

indicate that there is a hidden charge for the so-called nonessential patents in the Philips patent

packages." *Philips*, 424 F.3d at 1189, 1191 n.4. If Leviton wishes to rely on *Philips*, it can do so only on summary judgment after discovery, not on the pleadings—especially since P&S's defense alleges facts to the contrary of those in *Philips*.

> **2.      Leviton's Coercive Package License Also Is Misuse Under The Rule Of Reason**

The Federal Circuit's precedent is clear:  if a practice is not misuse per se, it will still constitute misuse under the rule of reason if it "tends to restrain competition unlawfully in an appropriately defined relevant market." *Mallinckrodt, Inc.,* 976 F.2d at 706 (citing *Windsurfing International, Inc. v. AMF, Inc.* 782 F.2d 995, 1001–02 (Fed. Cir. 1986)).  In making licensees pay for irrelevant patents to obtain licenses to the patents-in-suit, Leviton also has engaged in misuse under the rule of reason.  "Leviton's conduct has severe anticompetitive effects in a relevant market for a patent portfolio that, according to Leviton, covers circuit interrupting devices, including ground-fault circuit interrupters, and potential redesigned alternatives to those products, where Leviton, as the sole licensor, has monopoly power.  By forcing its victims to accept licenses to invalid patents, Leviton eliminates the economic incentive of its coerced licensees to challenge the validity of those patents with anticompetitive effect and contrary to public policy."  P&S Affirmative Defenses at 26.

Through its coercive package licensing, Leviton "[d]eliberately maximize[es] the cumulative cost of patent litigation in order to extract payments above and beyond the value of the patent in a competitive marketplace extends the patent monopoly to derive a benefit not attributable to the use of the patent's teaching." *Id.* at 27.  This practice leads to Leviton's demands for "supracompetitive royalties . . . [that] restrict output and raise prices in the downstream market for the technology-bearing products, therefore harming consumers" and the downstream products implementing those patents and "eliminates the economic incentive of its

coerced licensees to challenge the validity of those patents" and "injures competition in the market for ground-fault circuit interrupters, as well as other products that it purports to cover with its patent portfolio." *Id.* at 27–28. Those allegations demonstrate anticompetitive effects in relevant markets. *See, e.g., Todd v. Exxon Corp.,* 275 F.3d 191, 206–207 (2d. Cir. 2001) ("[M]arket power may be proven directly by evidence of the control of prices… or it may be inferred from one firm's large percentage share of the relevant market…. If a plaintiff can show an actual adverse effect on competition such as reduced output … we do not required a further showing.") (internal citations omitted).

### C.   Leviton's Assertion of the Patents-In-Suit Is a Misuse To Collect Royalties For Invalid Patents

P&S has alleged that the patents-in-suit and other patents in Leviton's portfolio are invalid.  Leviton is using the patents-in-suit to force P&S and others to purchase licenses to these invalid patents, and in doing so Leviton "eliminates the economic incentive of its coerced licensees to challenge the validity of those patents with anticompetitive effect."  P&S Affirmative Defenses at 26.  This is misuse.  Indeed, although a "'valid patent excludes all except its owner[,]' . . . an invalidated patent carries with it no such right." *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2231 (2013) (quoting *United States v. Line Material Co.,* 333 U.S. 287, 208 (1948)).  By forcing licensees to pay for invalid patents, and protecting those patents from invalidation, Leviton uses the patents-in-suit "'to acquire a monopoly not embraced in the patent.'" *See Princo v. Int'l Trade Comm'n*, 616 F.3d 1318, 1327 (Fed. Cir. 2010)(citing *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)).  In fact, using patent-based market power to extract payments for an unpatented article of commerce—such as an invalid patent—is a straightforward form of patent misuse. *Transparent-Wrap Mach. Corp.*, 329 U.S. at 641, 644–645.

17

Leviton's only response is that its threats and filing of lawsuits to force companies to license invalid patents cannot be misuse because, under the Patent Act, patentees can enforce their patent rights against infringement.  Leviton ignores, however, that "[i]t is axiomatic that one cannot infringe an invalid patent."  *Commil USA, LLC v. Cisco Sys. Inc.,* 720 F.3d 1361, 1368 (Fed. Cir. 2013).  Moreover, Leviton's argument is based on its patents being valid, which contradicts P&S's explicit allegations.

The cases upon which Leviton relies similarly assumes that the patentee was not asserting invalid patents.  Those cases are distinguishable because the court either adopted a legal standard to challenging affirmative defenses on the pleadings that this Court has rejected or decided the issue of patent misuse on summary judgment *after* fact and expert discovery had concluded.

### D.      Leviton's Monopolization Of The Relevant Market Is Misuse

Although P&S need only state its patent misuse defense, it has alleged that (i) Leviton's patent portfolios constitute relevant markets, (ii) Leviton has monopoly power in those markets, and (iii) Leviton acquired that power through anticompetitive conduct.  Those facts demonstrate actionable monopolization.  *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  By using the patents-in-suit to this effect, Leviton broadens their scope and thus misuses them.

The Supreme Court has long recognized that the willful acquisition of monopoly power other than through a "superior product, business acumen, or historic accident" is illegal monopolization.  *Grinnell Corp.*, 384 U.S. at 571.  By handpicking patents that have no standalone value—but that can be used to level unfounded claims of infringement against existing products—to create a systemic threat to its targets' businesses, Leviton monopolizes upstream technology markets to extract supra-competitive royalties from downstream licensees.  This constitutes misuse.  *See Auto. Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950), overruled on other grounds by *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) (suggesting

18

that the "accumulation of patents 'for the exaction of tribute'" and the "collect[ion] of royalties 'by means of the overpowering threat of disastrous litigation'" would be patent misuse)(internal quotations omitted).

### 1. Leviton Has Impermissibly Broadened the Scope of the Patents-in-Suit

Contrary to its assertions, Leviton has leveraged the patents-in-suit to increase their scope. P&S alleges that Leviton's license portfolio contains invalid and non-infringed patents and that Leviton is now using the patents-in-suit to give force to the monopoly power it already acquired through those acquisitions. The patents-in-suit are the conduit for Leviton's hold-up campaign; Leviton is using them to extract vastly greater sums than it could ever command from the patents-in-suit alone.  On their own, the patents-in-suit would command (at most) minimal value—value much closer to their respective inventive contribution.  But, asserted in serial fashion with the credible threat of more patent litigations to follow, Leviton can extract undue royalties. That epitomizes increasing the scope of the Patents-in-Suit with anticompetitive effect.

### 2. *Capital One* Does Not Help Leviton

Leviton urges the Court to adopt the reasoning of an unpublished opinion from the Eastern District of Virginia.  (Leviton Br. at 13); *Intellectual Ventures I LLC v. Capital One Financial Corp.,* Case No. 1:13-cv-00740, 2013 WL 6682981 (E.D. Va., Dec. 18, 2013). The *Capital One* decision, however, is inapposite here.  There, the court struck Capital One's patent misuse defense because it held that a relevant market must "consist[] of an 'area of effective competition' between IV and … the alleged victims of IV's anticompetitive conduct," and the defendant had failed to allege that the parties competed in the relevant market. *Id.* at *5.  Here, there is no dispute that P&S and Leviton are competitors in the electrical wiring device market generally and the GFCI market specifically.

The *Capital One* decision also mistakenly assumed that IV's "requiring, by way of settlement, the licensing of its entire portfolio of patents . . . would not appear to constitute patent misuse." *Id.* at 10.  As explained above, in requiring a licensee to pay for unwanted patents, a monopolist licensor does indeed commit misuse.  Further, the *Capital One* decision errs in holding that the "concept of patent misuse is premised on the existence of an enforceable patent." *Id.* As the Supreme Court explained, protecting one's patent against invalidation "prevent[s] the risk of competition [and] . . . that consequence constitutes the relevant anticompetitive harm." *Actavis, Inc.*, 133 S. Ct. at 2236.  Because an invalid patent carries no right to exclude, *id.* at 2231, the holder of such a patent necessarily goes beyond the scope of the patent when its conduct enables it to charge monopoly prices.

P&S has alleged that Leviton "[d]eliberately maximiz[es] the cumulative cost of patent litigation in order to extract payments above and beyond the value of the patent in a competitive marketplace[, which] extends the patent monopoly to derive a benefit not attributable to the use of the patent's teaching and therefore constitutes misuse."  P&S Affirmative Defenses at 27.  P&S has therefore both stated and shown patent misuse.  Nothing in *Capital One* changes that result.

## V.   CONCLUSION

For the reasons set forth above, P&S respectfully requests that this Court deny Leviton's motion for judgment on the on the pleadings under Federal Rule of Civil Procedure 12(c) on P&S's patent misuse affirmative defense.  Should the Court grant Leviton's motion, however, it also should grant P&S leave to amend its defense.  *See Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012) ("[W]hen affirmative defenses are stricken, the defendant should normally be granted leave to amend.").  Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely given when justice so requires."  *See Robbins*

*v. City of New York,* 17 CV 2229, 2017 WL 2274975, at *2. Allowing P&S a curative

amendment would fall within that prescription.


Dated:   June 9, 2017                    Respectfully submitted,


                                         */s/ Mark J. Abate*
                                         Mark J. Abate
                                         Calvin E. Wingfield Jr.
                                         Jordan D. Weiss
                                         GOODWIN PROCTER LLP
                                         The New York Times Building
                                         620 Eighth Avenue
                                         New York, New York  10018
                                         Tel.: +1 212 813 8800
                                         Fax.: +1 212 355 3333
                                         mabate@goodwinlaw.com
                                         cwingfield@goodwinlaw.com
                                         jweiss@goodwinlaw.com

                                         *Counsel for Defendant Pass & Seymour, Inc.*

## **CERTIFICATE OF SERVICE**

I, Mark J. Abate, hereby certify that on June 19, 2017 a true copy of the foregoing was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


    /s/ Mark J. Abate