```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
LEVITON MANUFACTURING CO., INC.,          :
                                          :
                                          :    MEMORANDUM DECISION &
                              Plaintiff,  :    ORDER
              - against -                 :
                                          :    17 Civ. 46 (BMC)
                                          :
PASS & SEYMOUR, INC.,                     :
                              Defendant.  :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Leviton Manufacturing Co., Inc. ("Leviton") brings this action against defendant Pass & Seymour, Inc. ("P&S"), alleging that P&S has breached the parties' "Settlement and License Agreement." The Settlement and License Agreement was executed in 2012 and resolved a lawsuit filed in this Court by Leviton against P&S for patent infringement (the "prior lawsuit"). The issue before me is whether P&S, by alleging patent invalidity in its counterclaims in this case, is subject to a clause in "Article III" of the Settlement and License Agreement that fixes damages in the event of an unsuccessful challenge to Leviton's patents, or whether that clause is void as a penalty.

In its complaint, Leviton claims that P&S's new model of ground fault circuit interrupters ("GFCIs") is covered by the license granted to it under the Settlement and License Agreement, but P&S has failed to pay royalties for sales of the new model. In defending these allegations, P&S has asserted that its new model is not covered by the license, and, in any event, Leviton's patents are invalid. P&S has also filed numerous counterclaims for declaratory judgment, including patent invalidity and non-infringement.

Before me are the parties' cross-motions for judgment on the pleadings, requesting that the Court enter judgment in their favor on count seven of P&S's counterclaims – declaratory

judgment of the unenforceability or inapplicability of Article III of the Settlement and License Agreement. For the following reasons, defendant's motion for judgment on the pleadings is granted and plaintiff's is denied.

## BACKGROUND

Leviton and P&S are both producers and manufacturers of electrical and electronic wiring devices and are direct competitors in the market for GFCIs. A GFCI is a device that protects people from electric shock and is commonly found in households in the United States. Leviton has several patents for electrical wiring devices, but central to this lawsuit are its Patent Nos. 7,463,124 (the "'124 patent'") and 7,737,809 (the "'809 patent").

In May 2012, Leviton filed the prior lawsuit against P&S alleging that P&S's 1596 model GFCI violated the '124 patent, '809 patent, and another Leviton patent not asserted in this suit. In December 2012, the prior lawsuit was dismissed when the parties entered into the Settlement and License Agreement in which the parties agreed that: (1) all claims and counterclaims asserted by Leviton and P&S against the other would be dismissed with prejudice; (2) the Court would retain jurisdiction over plaintiff and defendant to enforce the terms of the Settlement and License Agreement; and (3) P&S would be granted a non-exclusive license to specific claims of numerous of Leviton's patents.

Specifically, P&S was granted a non-exclusive license to the "Leviton Licensed Patents Rights," which encompass claims within five of Leviton's patents,[1] including the '809 patent and the '124 patent, that "do not include any limitation regarding reset lockout." The non-exclusive license granted to P&S permits it to "make, have made, use, offer for sale, sell, resell, import, or

---

[1] Although the Settlement and License Agreement defines "Leviton Licensed Patents Rights" to include specific claims within six of Leviton's patents, the parties executed a joint stipulation agreeing that one of the six patents, Leviton's Patent No. 7,764,151, "shall be considered excluded from the definition of 'Leviton Licensed Patent Rights.'"

otherwise transfer" any product of P&S that "is currently existing or that will be developed at any time in the future, including . . . any GFCI receptacles that would infringe any of the Leviton Licensed Patent Rights in the absence of the license granted herein." The agreement identifies these products as "Licensed Products." In accordance with the Settlement and License Agreement, since 2012, P&S has paid and continues to pay royalties to Leviton for sales of its 1596 GFCIs.

In 2015, P&S released the 1597 GFCI, a new redesigned model GFCI. P&S, however, has never paid royalties for sales of the 1597 GFCI. Leviton alleges that the 1597 GFCI is a Licensed Product because it would infringe the Leviton Licensed Patents Rights if not for the Settlement and License Agreement. It therefore brought this action seeking payment of royalties owed under the agreement.

P&S denies Leviton's allegations. It alleges that the 1597 model is not covered under the Settlement and License Agreement because it would not infringe the Leviton Licensed Patent Rights, and, in fact, P&S specifically designed the 1597 model to fall outside the Leviton Licensed Patents Rights. In the alternative, P&S alleges that the '809 patent and '124 patent are invalid.

Leviton claims that P&S's allegations of patent invalidity have triggered the application of Article III. Section 3.1 of the Settlement and License Agreement provides that:

> Commencing on the last date of execution below until the termination or expiration of this Agreement, so long as Leviton does not initiate legal or administrative proceedings against P&S . . . for infringement of the Leviton Licensed Patent Rights, or otherwise violate any release or covenant not to sue hereunder, P&S . . . agree[s] not to challenge the validity and/or enforceability of any claim encompassed by the Leviton Licensed Patent Rights (each a "Patent Challenge"), or to participate in, fund, or otherwise actively support in any way ("Support") any Patent Challenge.

Section 3.1 also includes a caveat to the prohibition on P&S's ability to commence a Patent

3

Challenge by providing that, "[n]othing in this Agreement shall prevent P&S . . . from . . . raising any and all affirmative defenses, claims and counterclaims if Leviton should bring any claim of infringement of one or more of the Leviton Licensed Patents against P&S . . . ." Section 2.13, which is comprised of releases granted to Leviton by P&S, echoes Section 3.1 by similarly stating that "[n]othing in this Agreement shall preclude P&S from raising any defense against a claim of patent infringement brought by Leviton."

Section 3.2 grants Leviton the right to terminate the Settlement and License Agreement if P&S breaches Section 3.1 by commencing, participating, or supporting any Patent Challenge. Section 3.3 provides Leviton with an alternative method of proceeding if P&S breaches Section 3.1. It states that:

> In any event and independent of Section 3.1 . . . and without limiting Leviton's rights and remedies with respect thereto, if P&S commences, participates in, or Supports any Patent Challenge, and Leviton does not elect to terminate [the Settlement and License Agreement], then:
>
> (i)   P&S agrees to pay all royalties accruing or due during the Patent Challenge;
>
> (ii)  during the pendency of that Patent Challenge (regardless of whether P&S withdraws from any patent Challenge if the Patent Challenge continues without P&S), the royalty rates in Article IV shall be [increased by 50%] per unit;
>
> (iii) unless the Patent Challenge results in the invalidity or unenforceability of all of the Leviton Licensed Patent Rights, then the royalty rates in Article IV shall permanently be increased [by 50%]; and
>
> (iv)  unless the Patent Challenge results in the invalidity or unenforceability of all of the Leviton Licensed Patent Rights, then P&S will have no right to recoup any royalties paid during the period of (or prior to) the Patent Challenge.

Here, Leviton does not seek to enforce Section 3.1 to block P&S from challenging the validity of its patents. Instead, it seeks to invoke the enhanced royalty provision in

4

Section 3.3 apply if and when it successfully establishes that its patents are valid and the 1597 GFCI is covered by the license.

Even though it concedes that it has commenced a Patent Challenge in this action, P&S advances the following arguments as to why the enhanced provision in Section 3.3 of the Settlement and License Agreement either does not apply or is unenforceable: (1) Leviton's complaint constitutes a "claim of infringement" and thus Section 3.1 permits P&S to challenge the validity of the Leviton License Patents Rights without triggering the double-royalty rate under Section 3.3; (2) Sections 3.1 and 3.3 are unenforceable under Lear, Inc. v. Adkins, 395 U.S. 653 (1969), and its progeny; and (3) Section 3.3 is an impermissible penalty clause under New York law.

## DISCUSSION

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings is appropriate where material facts are undisputed and only questions of law remain. Pesantez v. Johnson, No. 15 Civ. 1155, 2015 WL 5475655, at *1 (E.D.N.Y. Sept. 17, 2015); H.C. Schmieding Produce Co v. Alfa Quality Produce, Inc., 597 F. Supp. 2d. 313, 315 (E.D.N.Y. 2009).

On a motion for judgment on the pleadings, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice. Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). Additionally, the court may consider "materials incorporated in [the complaint] by reference and documents that, although not incorporated by reference, are integral to the complaint." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

5

For purposes of this motion, I may take judicial notice of the docket sheet in the prior lawsuit, see Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006). I may also consider the parties' Settlement and License Agreement as it is integral to and has been incorporated by reference in both the complaint and counterclaims.

I.     **Applicability of Sections 3.1 and 3.3**

P&S argues that its Patent Challenge in this action has not triggered the enhanced royalty provision because Section 3.1 provides an exemption from Section 3.3 that is applicable here. According to P&S, the clause in Section 3.1 that, "Nothing in this Agreement shall prevent P&S . . . from raising any and all affirmative defenses, claims and counterclaims if Leviton should bring any claim of infringement . . . against P&S", means that Section 3.3's enhanced royalty provision does not apply if Leviton brings a claim of infringement, and that is exactly what it has done in this lawsuit. I reject this argument for two independent reasons. First, I do not find that Leviton has asserted a "claim of infringement." Second, even if it had, Section 3.1 does not provide an exemption from the enhanced royalty provision in Section 3.3.

Leviton has asserted a breach of contract cause of action. P&S argues that the complaint constitutes a "claim of infringement" because it reads like a patent infringement complaint and contains "detailed element-by-element comparisons" of P&S's 1597 GFCI to Leviton's '124 and '809 patents that are "typical of allegations in a complaint for patent infringement." But that is immaterial. Leviton has not brought a claim against P&S for patent infringement, nor asked for infringement damages, nor sought an injunction under the Patent Act, see 35 U.S.C. § 283. Rather, it has accused P&S of breach of contract and seeks only breach of contract damages.

That the Court must construe the Leviton Licensed Patents and determine whether the 1597 GFCI is covered by the license granted to P&S to decide the merits of the case does not

convert Leviton's breach of contract claim into a patent infringement claim. See Bonzel v. Pfizer, Inc., 439 F.3d 1358, 1363 (Fed. Cir. 2006) (holding that the plaintiff's breach of contract claims did not arise under patent law for purposes of federal jurisdiction and explaining that "[t]he nature of this contract action does not change because the contract is a patent license . . . . [S]hould it come to pass that the court, in deciding whether the contract conditions were met, deems it appropriate to apply the law of patent infringement, that of itself does not change the complaint into one arising under the patent law."); Ballard Med. Prods v. Wright, 823 F.2d 527, 530 (Fed Cir. 1987) (explaining that "[t]he scope of a licensed patent may control the scope of a license agreement, but that rule of contract law cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws" and holding that 28 U.S.C. § 1338 did not provide the court with jurisdiction over the plaintiff's claim that the licensor had breached the exclusive license granted to the plaintiff by selling products covered by the license).[2] It is certainly common to raise the question of infringement in the context of a claim for breach of a licensing agreement, and if P&S wanted to limit its exposure for enhanced damages in the event of such a claim, P&S could have negotiated for that protection in the Settlement and License Agreement.

P&S next argues that the term "claim of infringement" should be given its ordinary meaning, and not limited to a legal cause of action under the patent laws, so that it encompasses any allegation by Leviton that P&S is unlawfully encroaching upon the Leviton Licensed Patent Rights. P&S claims that such a definition would cover the allegations in this action regarding

---

[2] P&S argues that Bonzel, Ballard, and other similar cases are inapplicable here because those cases addressed whether the court had subject matter jurisdiction. Although jurisdiction exists in this case regardless of whether the claim is brought for breach of contract or, alternatively, patent infringement (the former pursuant to the Settlement and License Agreement and the latter pursuant to the patent laws), Bonzel and Ballard demonstrate that a cause of action for breach of contract is not considered a cause of action for patent infringement merely because the allegations require a determination of the scope of the licensed patents and the license.

the 1597 GFCI. Leviton responds that it is irrelevant whether "claim of infringement" is construed narrowly as legal cause of action or broadly as an allegation because it has not alleged that P&S has infringed the Leviton Licensed Patent Rights. In support of this position, Leviton argues that P&S has a valid license to sell the 1597 GFCI, and under patent law, licensed products cannot infringe the patent.

  I agree with Leviton. Even if "claim of infringement" is read broadly to include any allegation of unauthorized use, Leviton's complaint would still not meet that definition. A licensee does not infringe the licensor's patent when its use is covered by the license agreement. Under patent law, only those who "without authority . . . sell[] any patented invention . . . infringe[] the patent." 35 U.S.C. § 271. Here, Leviton is not claiming that P&S does not have authority to sell its 1597 GFCI, nor could it. As explained above, the Settlement and License Agreement grants P&S a license to sell "any product of P&S . . . that is currently existing or that will be developed at any time in the future . . . that would infringe any of the Leviton Licensed Patents Rights in the absence of the license[] granted herein." Assuming for purposes of this motion that Leviton's allegations are true, and that the 1597 GFCI is covered by the Leviton Licensed Patent Rights, P&S is not infringing Leviton's patents because its sales of the 1597 GFCI are clearly authorized by the Settlement and License Agreement.

  It is immaterial whether "infringement" refers to patent infringement under the patent laws or the ordinary definition of infringement. As P&S concedes, the ordinary meaning of infringe is to "encroach upon in a way that violates the law." Merriam-Webster's Collegiate Dictionary at 642 (11th ed. 2003). Here, either P&S's sales of the 1597 GFCI are permissible because, as it claims, the 1597 GFCI does not fall within the scope of Leviton's patents, or the 1597 GFCI is covered by the Leviton Licensed Patent Rights, and P&S had the right to sell it

8

pursuant to the agreement.  This is not a case where Leviton is accusing P&S of using its patents in a way that exceeds the license.  See De Forest Tel. & Tel. Co. v. United States, 273 U.S. 236, 241 (1927) (explaining that a license is a defense to the tort of infringement and that once a party is granted a patent license, "the relation between the parties thereafter in respect of any suit brought must be held to be contractual, and not an unlawful invasion of the rights of the owner"); W. Elec. Co. v. Pacent Reproducer Corp., 42 F.2d 116, 118 (2d Cir. 1930) ("In its simplest form, a license means . . . leave to do a thing which the licensor would otherwise have a right to prevent.  Such a license grants to the licensee . . . a privilege that protects him from a claim of infringement by the owner of the patent monopoly."); see also Anthony Co. v. Perfection Steel Body Co., 315 F.2d 138, 141 (6th Cir. 1963) ("A valid license to make, use or sell a [product] is a complete defense to an action for infringement.").

  I note P&S's argument that a license does not prevent a licensor from bringing an infringement cause of action against a licensee, but merely provides the licensee with an absolute defense.  However, it is illogical to assume that, in the context of a license agreement between two sophisticated parties represented by counsel, the Settlement and License Agreement anticipates a situation where Leviton, without terminating the contract, sues P&S for infringement for a use covered by the license despite P&S's absolute defense to such a claim. More importantly, in its complaint, Leviton alleges that P&S's sales of the 1597 model "would infringe" the Leviton Licensed Patents "in the absence of the Settlement and License Agreement."  Despite P&S's representation to the contrary, nowhere in the complaint does Leviton allege that P&S is actually infringing its patents or that its sales of the 1597 model are an unauthorized use under the license.  Thus, whether "claim" is construed narrowly as a cause of action or broadly as an allegation, Leviton has not asserted a "claim of infringement."

9

Finally, I reject P&S's argument that "claim of infringement" has some particularized meaning under the Settlement and License Agreement that is different from its ordinary or legal meaning. P&S claims that when drafting Article III, the parties intended that if P&S decided to stop paying royalties on Licensed Products, then P&S could sue for breach of contract and the enhanced royalty provision would apply if Leviton raised patent invalidity as a defense. But if P&S never paid or stopped paying royalties on a product because it claimed that the product would not infringe the Leviton Licensed Patent Rights or that the Leviton Licensed Patents were no longer enforceable, and Leviton sued it for breach of contract, then the enhanced royalty provision would not apply even if P&S raised patent invalidity as a defense. This is because, under those circumstances, Leviton's complaint would be considered a "claim of infringement." There is no support for P&S's strained reading of the language in the Settlement and License Agreement.[3]

Moreover, even if Leviton's allegations constitute a "claim of infringement," the enhanced royalty provision would still apply. I do not find, as P&S advocates, that Section 3.1 provides a caveat from the application of the enhanced royalty provision in 3.3. Section 3.1 merely states that if Leviton brings a "claim of infringement" against P&S, then "[n]othing in this Agreement shall prevent" P&S from raising patent invalidity as a defense. But Section 3.3 does not "prevent" P&S from challenging the validity of the Leviton Licensed Patents; it only prescribes the consequences if P&S chooses to do so. That might have affected some measure of deterrence on P&S asserting invalidity (although obviously it didn't here), but a deterrent effect is not a prohibition. Only Section 3.1 actually proscribes P&S from commencing a Patent Challenge.

---

[3] I reject P&S's argument that the language in Section 3.1 supports its position that "claim of infringement" includes allegations that, if not for the license, P&S's product would infringe. If the parties intended to give the common phrase "claim of infringement" such a particularized meaning, they would have defined it in such way in Article I.

10

## II.     Enforceability of Sections 3.1 and 3.3

P&S argues that even if the enhanced royalty provision in Section 3.3 is applicable, it is unenforceable under Lear, Inc. v. Adkins and its progeny, which hold that in certain contexts a "no-challenge provision," in which the licensee agrees not to challenge the validity of the licensor's patents, is invalid, and that New York law similarity invalidates the provision as a penalty. Because I find that Section 3.3 is an unenforceable penalty provision, I need not reach whether it is also impermissible under patent law.

Penalty clauses, unlike liquidated damages clauses, are not enforceable under New York law. See Leasing Serv. Corp. v. Justice, 673 F.2d 70, 73 (2d Cir. 1982); see also Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 423-24, 393 N.Y.S.2d 365, 368-69 (1977). "Whether a provision in an agreement is an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances." 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc., 24 N.Y.3d 528, 536, 2 N.Y.S.3d 39, 44 (2014) (internal quotation marks omitted). The party seeking to avoid the liquidated damages provision bears the burden to show that the clause is, in fact, a penalty. See JMD Holding Corp. v. Cong. Fin. Corp., 4 N.Y.3d 373, 380, 795 N.Y.S.2d 502, 506 (2005); Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2004).

A contractually agreed upon clause will be held to constitute an enforceable liquidated damages provision where "(1) actual damages may be difficult to determine and (2) the sum stipulation is not plainly disproportionate to the possible loss." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 70 (2d Cir. 2004) (internal quotation marks omitted); see also Truck Rent-A-Center, Inc., 41 N.Y.2d at 425, 393 N.Y.S.2d at 369 (explaining the "well

established" rule that "[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation."). Under New York law, courts are to "construe a purported liquidated damages provision strictly . . . ." U.S. Fid. & Guar. Co., 369 F.3d at 71 (citing Elmira v. Larry-Walter, Inc., 76 N.Y.2d 912, 913-14, 563 N.Y.S.2d 45, 46 (1990)).

P&S argues that Section 3.3 is a penalty because the only possible damages Leviton could suffer as a result of P&S's breach of Section 3.1 is litigation costs for having to defend the Patent Challenge, but the doubling of the royalty rate is severely disproportionate to that. Leviton claims that Section 3.3 is enforceable because it is not intended to compensate it for damages, but rather to account for the added value a patent gains when it has survived a validity challenge. Regardless of its purpose, Section 3.3's fifty-percent royalty increase is not proportionate to any loss or gain Leviton may sustain from P&S's breach and is intended to compel P&S's performance in accordance with Section 3.1. See Union Capital LLC v. Vape Holdings Inc., No. 16 Civ. 1343, 2017 WL 1406278, at *7 (S.D.N.Y. March 31, 2017) (explaining that if a liquidated damages clause is "'intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced'" citing Rattigan v. Commodore Int'l Ltd., 739 F. Supp. 167, 169 (S.D.N.Y. 1990)). It is therefore an unenforceable penalty provision.

The first indication that Section 3.3 is a penalty is that if P&S commences a Patent Challenge, the royalty rate will be permanently increased by fifty percent, unless P&S successfully proves that all of the Leviton Licensed Patent Rights are invalid or unenforceable. As Leviton admits, this means that if P&S commences a Patent Challenge, and then later

abandons that challenge prior to a court ruling on validity, the royalty rate remains permanently enhanced. Leviton argues that the enhanced royalty provision is appropriate in this scenario because an abandoned challenge still enhances the value of a patent. Even accepting Leviton's theory as true, Section 3.3 is still a penalty because it does not account for the length of the Patent Challenge or its impact on the patents' value.

Under Section 3.3, the royalty rate increases by fifty percent regardless of whether P&S abandons the Patent Challenge the very next day after it commences it, or, as Leviton suggests, at the "eleventh hour" – for example, after a motion for summary judgment is fully briefed. It is common sense that a Patent Challenge that is quickly abandoned cannot enhance a patent's value to the same degree as a successfully defeated challenge or even a challenge pursued up until trial. If P&S were to abandon its Patent Challenge shortly after asserting it, the blanket fifty-percent royalty increase would be grossly disproportionate to any enhanced value to which Leviton might be entitled. Cf. Truck-Rent-A-Center, Inc., 41 N.Y.2d at 424, 393 N.Y.S.2d at 369 (explaining that a damages provision is a penalty where "in the event of default, [the promisee] would reap a windfall well above actual harm sustained"). Indeed, some courts have explained that a damages provision that awards a specified sum "no matter the timing of the breach" is likely to be a penalty clause because not all breaches are "of the same gravity" and thus the fixed damage award is not a "reasonable effort to estimate damage." Energy Plus Consulting, LLC v. Illinois Fuel Co., LLC, 371 F.3d 907, 909-10 (7th Cir. 2004) (internal quotation marks omitted); see also Bradford v. New York Times Co., 501 F.2d 51, 57 (2d Cir. 1974) ("[S]etting a fixed amount for any breach irrespective of the gravity or the probable damage to be completed might well classify the clause as an unenforceable penalty."); Am. Family Mut. Ins. Co. v. Graham, 792 F.3d 951, 962 (8th Cir. 2015) (commenting that a damages provision that fails to take into

account "the nature or timing of the breach, seems a penalty").

Another indication that Section 3.3 is a penalty is that the fifty-percent royalty increase starts at the outset of the challenge, rather than after the challenge has failed or is abandoned. In addressing this point, Leviton seems to concede that the fifty-percent increase in the royalty rate cannot be justified solely on the theory that a patent's value is enhanced when a challenge is unsuccessful. Leviton attempts to justify the royalty increase at the outset of the challenge by arguing that if the royalty rate increased only when the challenge failed, P&S could "pursue even borderline-frivolous validity arguments to the eleventh hour, forcing Leviton to incur extensive fees and costs," and avoid paying an enhanced royalty rate by abandoning the challenge "at the very last second." It thus claims that the enhancement of the royalty rate at the initiation of the Patent Challenge is "economically justified" because "patent litigation is not only lengthy, it can also be expensive."

But this justification – that the enhanced royalty provision compensates Leviton for its expenses in defending P&S's Patent Challenge – conflicts with Leviton's claim that Section 3.3 is a reflection of the increase in the patents' value rather than a liquidated damage provision. In fact, Leviton failed to respond to P&S's argument that Section 3.3 is not an enforceable liquidated damages provision because the doubling of royalty payments is severely disproportionate to any litigation costs Leviton would have to incur. P&S proffers that if the enhanced damages provision were to apply, Leviton would receive approximately ▮▮▮▮▮▮ every year until the patents expire. I agree with P&S that such a large amount of damages cannot reasonably be intended to cover Leviton's litigation costs as a result of P&S's breach.

Moreover, under Section 3.3, P&S's royalty rate is also permanently increased if it merely supports another entity's Patent Challenge. In such a case, Leviton would be forced to

14

incur litigation costs to defend the Patent Challenge, regardless of whether P&S supported the challenge or not. This makes it obvious that Section 3.3 is not intended to cover Leviton's actual damages.

Alternatively, Leviton claims that the validity of Section 3.3's requirement that the royalty rate increase during the pendency of the Patent Challenge is not ripe for the Court's determination because P&S is not currently paying royalties for the 1597 GFCI. Therefore, Leviton argues, the only time P&S will pay enhanced royalties is after Leviton has prevailed in demonstrating that its patents are valid and the Settlement and License Agreement covers the 1597 GFCI. This argument is meritless. Section 3.3 does not limit the fifty-percent royalty increase to the product in dispute; it applies to any Licensed Product. This means that the rate for P&S's products for which it currently is paying royalties, such as the 1596 GFCI, would immediately increase. This issue is thus ripe for consideration.

Leviton's argument that the increased royalty rate reflects the patent's enhanced value is also undermined by the fact that P&S's royalty rate increases if it supports another entity's Patent Challenge, even if it later abandons that support, but does not increase if another entity unsuccessfully challenges the Leviton Licensed Patent Rights. According to Leviton's theory, the patents' value would increase under either situation, but P&S's royalties are only increased if it is involved in the challenge. This further proves that the purpose of Section 3.3 is to penalize P&S for any action it takes in favor of a Patent Challenge and not to compensate Leviton.

Finally, Section 3.3 is a penalty because the double royalty provision permanently applies unless P&S successfully invalidates all of the Leviton Licensed Patent Rights – which includes specific claims within five separate patents – regardless of how many of the five patents P&S challenges. In this case P&S has asserted that only the '809 patent and '124 patent are invalid.

15

Even if it prevails and proves that both are invalid, the royalty rate for P&S's products covered by Leviton Licensed Patent Rights within the three unchallenged patents would still be permanently increased. This increase cannot be justified on the basis that the patents' value has been increased because those three patents were never challenged.

It is clear that the enhanced royalty provision in Section 3.3 is not intended to cover any loss or gain by Leviton as a result of P&S's breach, but to dissuade P&S from challenging Leviton's patents and to penalize it if it does. Such a provision is not enforceable under New York law.

## CONCLUSION

Defendant's motion for judgment on the pleadings is granted and plaintiff's is denied.

**SO ORDERED.**

                                                                                _____
                                                                                        U.S.D.J.

Dated: Brooklyn, New York
       July 18, 2017