```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
LEVITON MANUFACTURING CO., INC.,                            :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                            Plaintiff,                      :
                                                            :    17-cv-46 (BMC)
            - against -                                     :
                                                            :
PASS & SEYMOUR, INC.,                                       :
                                                            :
                            Defendant.                      :
                                                            :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Before me is plaintiff Leviton Manufacturing Co., Inc.'s ("Leviton") motion for judgment on the pleadings as to defendant Pass & Seymour's ("P&S") affirmative defense of patent misuse in this breach of contract action with underlying patent infringement issues. The primary questions on the motion are (a) whether a settlement and licensing agreement between the parties arising from a prior litigation precludes defendant from asserting the defense of patent misuse in this action; and (b) if it does not, whether *res judicata* nevertheless bars the assertion of that defense. I conclude that the language of the contract does not preclude the defense, and because the claim that plaintiff asserts in this action is different than the claim it asserted in the prior action, the defense is not barred by *res judicata*, even though the proof required to establish the defense may be the same or similar to what it would have been if the defense had been raised in the prior action. There is an alternative effort by plaintiff to reach the merits of the patent misuse defense, but that also fails. Accordingly, plaintiff's motion for partial judgment on the pleadings, dismissing the patent misuse defense, is denied.

**BACKGROUND**

In 2012, Leviton sued P&S alleging infringement of three patents – Nos. 7,463,124 (the "'124 patent"), 7,737,809 (the "'809 patent"), and 7,764,151 (the "'151 patent"). Leviton Mfg. Co., Inc. v. Pass & Seymour, Inc., No. 12-cv-2257 (the "prior case"). The allegedly infringing device at issue in the prior case (and in this one) was a ground circuit fault interrupter ("GCFI"), which is the mechanism in an electrical circuit that cuts off electricity in the event of a short circuit or other malfunction. The infringing product in the prior case was referred to as P&S's "1596 model GFCI."

The parties settled the prior case pursuant to a Settlement and License Agreement dated December 10, 2012 (the "Agreement"). As its name implies, the Settlement and License Agreement included a licensing scheme under which P&S would pay royalties to the extent it sold devices that fell within five of Leviton's patents. The Settlement and License Agreement also provided for an Order of Dismissal in the prior case, with the Court retaining jurisdiction to enforce the Settlement and License Agreement, which was entered.

The current dispute is over P&S's sales of its "1597 model GFCI," an allegedly different device that P&S began selling in 2015. Leviton has sued for breach of the Settlement and License Agreement because P&S is not paying royalties for its sales of the 1597 model, but whether there was a breach will turn on whether the 1597 model falls within Leviton's patents such that it would be infringing if not for the license granted to P&S in the Settlement and License Agreement.

In its answer to the complaint, P&S asserted numerous affirmative defenses, including patent misuse. The defense as pled has two closely related components. First, P&S asserts that

2

Leviton has used threats and lawsuits to coerce companies, including P&S, into paying royalties based on invalid patents. Second, it asserts that Leviton has used "serial litigation," to browbeat licensees into ever-expanding licenses and thereby impermissibly broaden the scope and its patents and unlawfully monopolize the market for GCFIs.

Leviton has moved for partial judgment on the pleadings, seeking dismissal of this defense. It argues that: (a) the defense of patent misuse falls within the release provision of the Settlement and License Agreement and is therefore precluded; (b) even if the Settlement and License Agreement does not bar assertion of patent misuse, the doctrine of *res judicata* does; and (c) even if the defense is not barred, it fails on the merits.

## DISCUSSION

### I

Leviton first contends that under the § 2.13 of the Settlement and License Agreement, P&S released its patent misuse defense. Section 2.13 states that P&S "releases and forever discharges Leviton . . . from any claims known or unknown that were or could have been raised in and which relate to or arise in any way from" the prior case. Leviton is wrong.

"[A] release – like any contract – must be construed in accordance with the intent of the parties who executed it." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 515 (2d Cir. 2001). "[D]eference is to be paid to the plain meaning of the language of a decree and the normal usage of the terms selected." United States v. Broad. Music, Inc., 275 F.3d 168, 175 (2d Cir. 2001). "Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed." Wang v. Paterson, No. 07 Civ. 2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec. 18, 2008) (internal quotation marks omitted); see also Peterson v. Regina, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) ("[C]ourts must look to the language of a release – the

3

words used by the parties – to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous."). Under New York law, "'a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.'" Loccenitt v. Pantea, No. 12 Civ. 1356, 2014 WL 7474232, at *2 (S.D.N.Y. Dec. 29, 2014) (quoting Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998)).

The Settlement and License Agreement does not define the word "claim," but its meaning is clear enough. It is a "demand or request for something considered one's due." Oxford Living Dictionary, https://en.oxforddictionaries.com/definition/claim (last visited August 21, 2017). It can be used in arguments, personal relationships, business, or law. However used, it means that someone is asking for money, property or other consideration to come their way.

But a claim is not an affirmative defense. Indeed, in law, a claim is the opposite of an affirmative defense, that is, an affirmative defense is a means to defeat or avoid a claim. The Federal Rules of Civil Procedure clearly distinguish between a claim and an affirmative defense. Compare Fed. R. Civ. P. 8(a) with Fed. R. Civ. P. 8(c). And it is of course common for contracting parties or settling litigants to prohibit the assertion of one, some, or all affirmative defenses should there be subsequent litigation between them. See, e.g., Braintree Labs., Inc. v. Breckenridge Pharm., Inc., __ F. App'x __, No. 2016-1731, 2017 WL 1829140, at *4 (Fed. Cir. May 5, 2017) (waiving all defenses except noninfringement); Hugler v. First Bankers Trust Servs., Inc., No. 12-cv-8649, 2017 WL 1194692, at *7 (S.D.N.Y. March 30, 2017) (waiving untimeliness defense). Indeed, the very suggestion of "releasing an affirmative defense" is dissonant, for it is a claim, under its many synonymous variations, that gets released, not an

4

affirmative defense. A more common phrase for the relinquishment of affirmative defenses is to waive them.

The parties, who were both represented by counsel, understood these basic principles when they signed the Settlement and License Agreement. When they wanted to refer to affirmative defenses, they knew how to do so and did so expressly. In § 3.1 of the Settlement and License Agreement, the parties agreed that "[n]othing in this Agreement shall prevent P&S . . . from raising any and all affirmative defenses, claims, and counterclaims . . . if Leviton should bring any claim of infringement . . . against P&S . . . ."

Leviton attempts to turn the parties' recognition of the separate treatment of claims and defenses on its head, arguing that the *only* instance in which P&S can assert an affirmative defense is where Leviton has sued for infringement – and the instant claim is for breach of the Settlement and License Agreement, not infringement. In ruling on the parties' prior cross-motions for partial judgment on the pleadings, I agreed with Leviton that its claim should be characterized as one for breach of contract, rather than for patent infringement, even though the Court must construe Leviton's patents and determine whether the 1597 model would infringe to decide the merits of the claim.

However, I made that determination solely for the purpose of construing the effect of § 3.3 of the Settlement and License Agreement on this lawsuit. That section imposes a penalty (as I so held, not liquidated damages), in the event that P&S challenges the validity of Leviton's patents in an infringement action. It remains the fact that there is nothing in the Settlement and License Agreement waiving (or "releasing") any affirmative defense. P&S's express reservation of its right to assert defenses in an infringement action does not mean that it waived defenses as to any other claim that Leviton might bring that involves infringement-like issues.

If Leviton wanted the release to preclude P&S from raising particular issues and defenses no matter what the context, it should have drafted the release to say so. It did not, and the Settlement and License Agreement does not prohibit P&S from raising patent misuse in this case.

**II**

Leviton alternatively contends that P&S's patent misuse defense is barred by *res judicata* based on the Order dismissing the prior action pursuant to the Settlement and License Agreement. The deficiencies of this argument seem straightforward. It fails for two reasons.

First, the Supreme Court has exempted the defense of patent misuse from the usual rules of *res judicata* on the ground of what was then called equity and is now called public policy. Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 670 (1944). Although Mercoid has been criticized and many attempts have been made to limit it to its facts, see, e.g., Cummins, Inc. v. TAS Distrib. Co., Inc., 700 F.3d 1329, 1337-38 (Fed. Cir. 2012); Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 701-03 (2d Cir. 2000); Glitsch v. Koch Eng'g Co., Inc., 216 F.3d 1382, 1385-86 (Fed. Cir. 2000); but see Tank Insulation Intern., Inc. v. Insultherm, Inc., 104 F.3d 83, 86-88 (5th Cir. 1997) (rejecting criticism of and attempts to limit Mercoid), none of the bases for those distinctions apply here. Rather, this case is indistinguishable from the Federal Circuit's characterization of Mercoid in Glitsch, 216 F.3d at 1385-86, in which it explained that "Mercoid involved two successive infringement actions, and the question in the case was whether, having failed to raise patent misuse as a defense in the first infringement action, Mercoid had forfeited its opportunity to raise patent misuse as a defense in the second infringement action." The Supreme Court answered that question in the negative in Mercoid and so that has to be the answer here as well.

Even if <u>Mercoid</u>'s special treatment of the patent misuse defense did not permit its assertion in this case, Leviton's *res judicata* argument would still have to be rejected on this motion as premature. This is because the application of *res judicata* to preclude P&S's patent misuse defense is inextricably intertwined with the merits of Leviton's breach of contract claim.

The Federal Circuit has made it clear that if the alleged infringing product in the second suit is "essentially the same" or "only colorably different" than the product at issue in the first suit, then *res judicata* bars a challenge to the patent's validity. <u>Hallco Mfg. Co., Inc. v. Foster</u>, 256 F.3d 1290, 1297 (Fed. Cir. 2001). <u>Hallco</u> further held, conversely, that if the alleged infringing products in two actions are not essentially the same, then *res judicata* will not bar the patent validity defense in the subsequent action. <u>Id.</u> at 1298. <u>Hallco</u> is consistent with the transactional approach to *res judicata*, which precludes its application if the second suit involves different or new facts. See <u>E.I. du Pont de Nemours & Co. v. U.S.</u>, 561 F. Supp. 2d 1320, 1330-32 (Ct. of Int'l Trade 2008). I do not see why patent misuse should be viewed differently than patent invalidity in this context.

I am in no position to make the comparison between the 1596 and the 1597 models on the present record, which alone warrants denial of Leviton's motion. Moreover, once I am, the resolution of that issue may go a long way to resolving, if it does not completely resolve, Leviton's breach of contract claim. At the very least, if I find that the 1596 and 1597 models are "essentially the same," it seems more likely that P&S will owe royalties under the Settlement and License Agreement for the 1597 product, and if I find they are not, then it probably won't. In any event, I cannot determine the application of *res judicata* at present, even without regard to <u>Mercoid</u>.

**III**

**A.**

P&S barely mentioned the basis for my conclusion in rejecting Leviton's "release" argument, and did not mention at all the grounds upon which I have rejected Leviton's *res judicata* defense. Instead, the parties have conflated Leviton's two arguments through a convoluted tangent involving a prior proceeding before the International Trade Commission ("ITC") and its unreported disposition by the Federal Circuit, i.e. Fujian Hongan Elec. Co. v. U.S. Int'l Trade Comm'n, No. 2012-1493 ("Fujian").

The crux of P&S's argument is that neither the Settlement and License Agreement nor *res judicata* can bar its patent misuse defense because it could not have raised patent misuse prior to signing the Settlement and License Agreement. This is because, according to P&S, it was only after the Federal Circuit affirmed a decision of the ITC that invalidated certain of Leviton's patent claims that are "similar to" – not the same as – the ones at issue in this action. It was the Federal Circuit's decision, P&S asserts, that illuminated Leviton's uses of invalid patents – invalid, at least, by analogy to the patents or claims at issue in Fujian. Because the Federal Circuit had not affirmed Fujian at the time the parties entered into the Settlement and License Agreement and this Court dismissed the prior action, P&S contends, its patent misuse defense survives both the Settlement and License Agreement and *res judicata*.

Leviton could have easily disposed of this argument by pointing out that the release in the Settlement and License Agreement expressly bars both known and unknown claims, and that in the absence of fraudulent concealment, which P&S does not allege, *res judicata* also bars unknown claims that could have been raised. Instead, the parties became embroiled in analyzing the scope, issues, and timing of the ITC proceeding, the precedential effect, if any, of Fujian, and

what the ITC had actually ruled. I see no reason to reach those issues because the disposition of Leviton's release and *res judicata* arguments is straightforward, as set forth above.

**B.**

Nevertheless, the parties have forced me to give some consideration to Fujian in the context of Leviton's challenge to the "plausibility" of P&S's patent misuse defense. Leviton's argument merges two related but distinct pleading infirmities, one of which is inapposite here, and the other of which it is premature to address. And once again, the parties have gone off on a frolic and detour, leaving the Court on a faraway shore to watch their two ships passing in the night.

"Plausibility" refers to the omission of sufficient factual allegations to constitute a claim for relief as required under Federal Rule of Civil Procedure 12(b)(6) and explained by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). These cases address a situation where a pleader camouflages the absence of sufficient facts to support a claim through the use of mere conclusory assertions, whether factual or legal. The overwhelming majority view, to which I subscribe, is that the concept of plausibility has no application to affirmative defenses. See Sibley v. Choice Hotels Intern., Inc., 304 F.R.D. 125, 132-33 (E.D.N.Y. 2015) (collecting cases).

Leviton contends, based on one sentence of dictum in a single district court case (and there are probably other casual references to "plausibility" in the context of affirmative defenses), that the reason for the majority view is that these cases were applying Federal Rule of Civil Procedure 12(f) instead of 12(c). That is beyond incorrect. Parties more frequently invoke Rule 12(f), rather than Rule 12(c) as Leviton has done, because Rule 12(f) expressly states that a matter within a pleading may be stricken as legally "insufficient," and, in fact, that is a better

9

description of what Leviton's motion is attempting to do. But the question is whether Federal Rule of Civil Procedure 8(c) requires an affirmative defense to meet the plausibility standard, regardless of the procedural vehicle used to attack it, and the majority view is that it does not.

If anything, P&S has pleaded a lot more than that which is required under Rule 8(c), and, indeed, a lot more than it should have. The first paragraph of the affirmative defense states: "Patent misuse renders the asserted claims of the '809 patent and '124 patent unenforceable. Leviton has engaged and continues to engage in a scheme to impermissibly broaden the scope of its patents, including the '809 and '124 patent, with anticompetitive effect." If that was all it said, I would see no inadequacy in its pleading, nor would I find any based on Leviton's invocation of Rule 12(c) when juxtaposed against the complaint. Leviton would be on notice that there is a patent misuse defense in play, and it would be able to obtain discovery from P&S to find out exactly what conduct it was contending constitutes patent misuse (and, reciprocally, P&S would be able to take discovery from Leviton on that issue).

However, P&S did not stop at the language quoted above. It ignored the basic principle of pleading that, in most cases, one should say as much as is necessary and no more, and continued to allege the basis for the affirmative defense of patent misuse for four more pages. Despite its length, the allegations actually say very little about the defense, and, as Leviton points out, mostly include boilerplate language that P&S likely cloned from another case. In the course of doing that, P&S references, as an example of how Leviton has abused its patent, the Federal Circuit's decision in Fujian. And so we are back to Fujian.

It is from that citation that Leviton's second, and more important, challenge to the patent misuse defense is raised – Leviton seeks a determination that the patent misuse defense fails on its merits. That is not a "plausibility" argument under Iqbal and Bell Atlantic. Rather, Leviton is

advancing a failure on the merits as a matter of law, one form of legal insufficiency, as used in Rule 12(f). That is, when one views the totality of P&S's defense, not the just words it used, but all the facts upon which it is based, it fails on the merits because the conduct complained of does not constitute patent misuse.

As suggested above, I see no problem with Leviton having designated its motion as brought under Rule 12(c) instead of Rule 12(f). However, if a litigant is going to challenge the merits, i.e., not the fulsomeness of the factual allegations, but whether the undisputed facts show the failure of an affirmative defense, then, whether under Rule 12(c) or Rule 12(f), the failure of the defense as a matter of law has to be apparent from the face of the pleadings, or, as with a motion under Rule 12(b)(6), such additional material that is deemed part of the pleadings through incorporation by reference. See, e.g., Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); Dejesus v. HF Mgmt. Servs., LLC, No. 12-CV-1298, 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012) ("In general, affirmative defenses are not properly available on a motion to dismiss for failure to state a claim, unless the 'the defense appears on the face of the complaint.'") (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 72 (2d Cir. 1998)).

To address the merits of P&S's patent misuse defense, Leviton again attacks the scope, issues, and timing of the ITC proceeding, the precedential effect, if any, of the Federal Circuit's Fujian decision, and what the ITC had actually ruled. And that is all that it does – in its view, P&S's defense rises or falls on Fujian.

P&S, for its part, takes the bait. Instead of saying "our defense is not *just* based on Fujian," as the broad language of its affirmative defense would have permitted, P&S asserts that the Federal Circuit's Fujian decision shows how Leviton is misusing its patents, even though

11

P&S could well have argued that its statement of the general defense encompasses other Leviton conduct (which it does), and that it needs discovery into that conduct. [1]

But even if P&S was required to successfully defend its characterization of Fujian to maintain its patent misuse defense, there are still factual issues. An adverse, precedential determination by the Federal Circuit or the Supreme Court of the patent in issue is not a prerequisite to a patent misuse defense. If a patentee knows his patent will not survive a validity challenge – for whatever reason – and nevertheless uses it to leverage licenses under threat or actual use of cripplingly expensive litigation, then that may constitute patent misuse. And if a closely related patent is used for that purpose when its cousin has in fact been declared invalid, then that could also be patent misuse.

Here, I cannot tell how the patents or claims within the patents in this case compare with those claims or patents declared invalid in Fujian. Even if I accept Leviton's point that they are different patents and claims, P&S is resting on "substantial similarity" between them, and I cannot resolve that issue on a motion for judgment on the pleadings. Moreover, at this stage of the litigation, I am not prepared to limit the patent misuse defense to a comparison with the Fujian case (even though P&S appears to be). P&S has validly interposed a patent misuse defense, and its validity will be determined at summary judgment or trial. [2]

---

[1] Of course, P&S is not going to be granted broad discovery to go hunting for actions that might constitute patent abuse. If, as Leviton construes it, the defense is limited to the Fujian matter, then there is no basis for discovery beyond that. However, disposition of the affirmative defense is still going to require a detailed comparison of the patents and claims at issue in Fujian and those here. It is not enough, as Leviton argues, that they are merely "different" patents and claims.

[2] The parties are advised that the Court's patience with piecemeal motions challenging claims or issues is at an end. There is going to be a Markman hearing in this case, if necessary, followed by a single summary judgment motion, if appropriate, and then a trial of any remaining claims.

## CONCLUSION

Leviton's motion for partial judgment on the pleadings, dismissing P&S's patent misuse defense, is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       August 25, 2017