UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                   :

LEVITON MANUFACTURING CO., INC.,     :        **MEMORANDUM**
                                          :        **DECISION AND ORDER**

                         Plaintiff,     :

                                          :        17-cv-46 (BMC)

                - against -         :

PASS & SEYMOUR, INC.,                :

                          Defendant.    :

----------------------------------------------------------- X

**COGAN**, District Judge.

       This breach of contract case concerns plaintiff Leviton Manufacturing Co., Inc.'s U.S.
Patent No. 7,463,124 (the '124 patent).  The device at issue, a ground-fault circuit interrupter
(GFCI), is a fast-acting circuit breaker designed to shut off electric power in the event of a
ground fault.  Back in 2012, Leviton sued Pass & Seymour (P&S) for infringing its '124 patent.
The parties then entered into a Settlement and Licensing Agreement, in which P&S agreed to pay
Leviton royalties for any of its products that infringed upon, among others, the '124 patent.
Leviton claimed that P&S breached the agreement and brought a claim seeking unpaid royalties.

       At trial, P&S pursued a declaratory judgment counterclaim for invalidity as to the '124
patent under the theory that Leviton's patent was obvious.  It argued that a person of ordinary
skill in the art (POSA) in 1999, the priority date, once armed with the knowledge gleaned from
the prior art, would have reason to modify P&S's own patent, U.S. Patent No. 5,594,398 (the
Marcou or Marcou GFCI), and successfully create the device set forth in the asserted claims.
The jury agreed and returned a verdict declaring Leviton's patent invalid.

Before me are four separate post-trial motions: (1) Leviton's motion for judgment as a matter of law; (2) motion for a new trial; (3) motion for attorney fees and costs; and (4) P&S's application for taxation of costs. Leviton's first and third motions are denied, but I am granting it a new trial because I erred by excluding certain evidence at trial, stemming from a decision on summary judgment. The application for taxation of costs is denied without prejudice.

## DISCUSSION[1]

## I.    Leviton's Motion for Judgment as a Matter of Law

A motion for judgment as a matter of law will be granted "only when, considering the evidence in the light most favorable to the non-moving party and drawing all reasonable evidentiary inferences in that party's favor, there was 'no legally sufficient evidentiary basis for a reasonable jury to find' in favor of the non-moving party." Nimely v. City of New York, 414 F.3d 381, 389-90 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)). In deciding the motion, a court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted).

A claimed invention is unpatentable if the differences between the invention and the prior art "are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "To invalidate a patent claim based on obviousness, a challenger must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." ActiveVideo Networks, Inc. v.

---

[1] Since the parties are familiar with the factual and procedural history of this case, I recount only those facts necessary to explain my decision on the instant four motions.

Verizon Comm'ns, Inc., 694 F.3d 1312, 1327 (Fed. Cir. 2012) (quotation marks and citation

omitted).  Obviousness is a question of law based on factual underpinnings.[2]  Id. (citing Graham

v. John Deere Co. of Kansas City, 383 U.S. 1, 17 (1966)).

The moving party is entitled to judgment as a matter of law when the court is convinced:

(1) that reasonable persons could not in light of the evidence have found the facts necessary to

support the jury's verdict; or (2) that the facts properly found cannot in law support that verdict.

R.R. Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1513 (Fed. Cir. 1984).  Thus, a court

should: (1) determine whether the facts are supported by substantial evidence; and (2) determine

whether those facts support the legal conclusions necessarily drawn by the jury en route to its

verdict.  Id.

Leviton advances four grounds for why it is entitled to judgment as a matter of law: (1)

P&S failed to present substantial evidence a POSA would have been motivated to modify the

Marcou GFCI; (2) P&S failed to present substantial evidence a POSA would have had a

reasonable expectation of success; (3) P&S's arguments as to Claims 23 and 24 were contrary to

the Court's claim construction; and (4) P&S failed to provide substantial evidence that the

"Modified Marcou GFCI" rendered method claims 39 and 40 obvious.  None of these arguments

have merit.

First, there was ample evidence from which a rational jury could find that a POSA would

have been motivated to modify Marcou to arrive at the asserted claims by separating the load and

face terminals and then incorporating a four-pole switch.  See Game & Tech. Co. v. Activision

---

[2] "The determination [of] whether an invention would have been obvious under Section 103 of the Patent Act is a
legal conclusion based on factual findings as to (1) the scope and content of the prior art, (2) the level of ordinary
skill in the prior art, (3) the differences between the claimed invention and the prior art, and (4) any relevant
secondary considerations."  Infosint, S.A. v. H. Lundbeck A/S, 718 F. Supp. 2d 445, 448-49 (S.D.N.Y. 2010) (citing
Graham v. John Deere Co., 383 U.S. 1, 17 (1996)).

Blizzard Inc., 926 F.3d 1370, 1381 (Fed. Cir. 2019) (a patent can be obvious in light of a single

prior art reference if it would have been obvious to modify that reference to arrive at the patented

invention).  Dr. Thomas Harman testified that "Marcou disclose[d] all claim elements except for

[the] electrically isolated line, load and face terminals."  It was well known by the priority date

that conventional GFCIs like Marcou would present a risk of electrocution if installed with the

wiring reversed.  He explained, however, that a POSA reviewing the NEMA Guide, an important

background reference, would have understood the source of the problem: the load and face

terminals were physically connected together as part of a single piece of metal, which allowed

electricity to flow through the GFCI even after the unit had been tripped if the wiring was

reversed.  Since the NEMA Guide showed the circumstances under which electrocution could

occur, his testimony went, it provided a POSA reason to modify conventional GFCIs.

Harman then testified, once presented with this obstacle, a POSA would appreciate the

need to physically and electrically separate the load and face terminals to prevent the risk of

electrocution.  A POSA would accomplish this, the witness opined, by using a four-pole switch,

"a particularly advantageous arrangement" present in the prior art.[3]  This would have been easily

implemented because Marcou already set forth the key foundation (i.e., a dual-contact structure)

necessary to implement this type of switch once leaf springs were attached to the busbar.[4]  Thus,

a POSA seeking to improve the Marcou GFCI to address the warning of reverse wiring in the

NEMA Guide, according to Harman, would also consider Echtler's four-pole switch.  See In re

Omeprazole Litig., 490 F. Supp. 2d 381, 511 (S.D.N.Y. 2007) (a POSA is deemed to have

knowledge of all pertinent prior art).

---

[3] Harman identified U.S. Patent No. 5,239,438 ("Echtler") as an example of such a device.

[4] Leaf springs are "flexible pieces of metal" that could be used to conduct electricity.

Harman's testimony thus supported the conclusion that a POSA would modify Marcou –
with knowledge gleaned from Echtler – to achieve the device set forth in the asserted claims.  All
of this could have been accomplished without jeopardizing the GFCI's physical components or
degrading its operation.

Second, there was substantial evidence from which a rational jury could find that a POSA
would have had a reasonable expectation of success.  Specifically, Harman testified a POSA –
relying on the movable-contact structure disclosed in Marcou – could have decided to create
three points of electrical connection within the Modified Marcou GFCI.  The Marcou design
even presented a "logical place to cut" the load and face terminals apart, resulting in three points
of electrical connection and yielding a predictable result: by physical separation, the electricity
would no longer flow between them.  Thus, a POSA would know, based solely on the prior art,
that Marcou could be modified to separate the terminals and incorporate a four-pole switch.
Harman further testified as to how these modifications could be accomplished without negatively
impacting the device's other components and thus its operation, and as to the specific, additional
modest modifications a POSA would find necessary depending on the approach taken.  See In re
ICON Health & Fitness, Inc., 496 F.3d 1374, 1382 (Fed. Cir. 2007) (obviousness analysis may
account for "the modifications that one skilled in the art would make to a device borrowed from
the prior art").  The jury thus could conclude that a POSA would have a reasonable expectation
that modifying Marcou would successfully minimize the risk of electrocution when a GFCI is
installed incorrectly with the wiring reversed.  See Wyers v. Master Lock Co., 616 F.3d 1231,
1245 (Fed. Cir. 2010) (claims obvious when the patent represents no more than the predictable
use of prior art elements according to their established functions).

Third, I reject Leviton's contention that P&S's arguments as to Claims 23 and 24 were contrary to the Court's claim construction. Leviton claims that the line, load, and face conductors must be three separate elements under the Court's construction, and that P&S improperly argued a unitary structure in Marcou – in which a single structure acted as both load terminal and face terminal – satisfied the second and third electrical conductors limitations of Claim 23 and 24.

As an initial matter, although the language "three different kinds of terminals" appears in the decision, it is not part of any actual construction.[5] That is in part why I denied Leviton's request to have this language included in the jury instructions.[6]

In any event, P&S's theory at trial was not that Marcou alone anticipated the claims and that the unitary load conductor met the limitations of Claims 23 and 24, but that separating the load and face terminals in Marcou provided an obvious solution to the electrocution risk posed by reverse wiring. Harman's testimony accounted for "three different kinds of terminals" by explaining that the first modification a POSA would make to Marcou would be to break the

---

[5] The phrase appears in my explanation for the construction of the term "electrical load connection terminal accessible externally of said device." The parties had disputed what kinds of loads could be connected to the terminal, as described in Claim 23. I concluded that the plain language supported Leviton's construction that these loads be limited to "downstream load circuits," explaining:

> Claim 23 refers to three different kinds of terminals: (1) "an electrical line connection terminal," (2) "an electrical load connection terminal" and (3) "a user-accessible electrical socket connector terminal accessible to a user-installed connecting plug from the external face of the device." These different terms suggest that they refer to terminals with different functions, which militates against reading "electrical load connection terminal" as used in this claim as referring to both the downstream and face terminals.

I then construed the term "electrical load connection terminal accessible externally of said device" to mean "the terminal connectable to downstream load circuit, which is accessible externally of the device."

[6] In response to Leviton's request, I explained before trial that I would instruct the jury as to the claim terms; the parties should not presume to draw any inferences from the claim construction order; any party who characterized the terms during trial did so at the risk that I would instruct the jury that they mean something different than what the parties said; and, if I thought there were ambiguities in the claim construction order, I would have addressed them earlier.

single-piece load terminal into two pieces, creating three different terminals in a Modified Marcou GFCI: a line terminal, load terminal, and face terminal.  The modified switch would then act upon those three terminals.  P&S's argument thus was neither an improper expansion of the scope of the Marcou prior art nor a violation of the Court's claim constructions.

Finally, Leviton contends that the Court should grant its JMOL on claims 39 and 40 because the testimony relating to these claims was insufficient as a matter of law.  I disagree. Harman identified where Marcou revealed each standard GFCI component recited in claims 39 and 40 and explained how these components operated together in the Marcou GFCI.  With this background, he then proceeded to explain how a POSA would incorporate Marcou's Figure 34 busbar into the GFCI described in Figure 11.  He identified the three points of electrical connection that would be controlled by the four-pole switch implemented through the busbar and how the switch would operate within the modified GFCI.  As to the other components, he explained that they would be operated in the same way that they had operated originally.  This is sufficient evidence for a jury to conclude that a POSA would have operated the Modified Marcou GFCI according to the steps in claims 39 and 40.

In any event, assuming *arguendo* that P&S failed to present substantial evidence that the Modified Marcou GFCI rendered method claims 39 and 40 obvious, "the district court has discretion to order a new trial rather than grant judgment as a matter of law if it believes that the defect in the nonmoving party's proof might be remedied on a second trial."  9A Wright & Miller § 2538; see <u>Manley v. Ambase Corp.</u>, 121 F. Supp. 2d 758, 771 (S.D.N.Y. 2000).  This case is one in which any defect in P&S's proof may be remedied on a second trial.

II.      **Leviton's Motion for a New Trial**

A court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  A new trial may be granted even if there is substantial evidence supporting the jury's verdict.  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).  Grounds for granting a new trial include where: "(1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial error occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive."  Welch v. United Parcel Serv., Inc., 871 F. Supp. 2d 164, 171 (E.D.N.Y. 2012).  Leviton contends a new trial is warranted because the Court erroneously excluded crucial evidence that could have rebutted P&S's theory of obviousness.

In its motion for summary judgment, P&S sought a ruling that there was no nexus between the claims at issue in the '124 patent and Leviton's evidence of secondary indicia of nonobviousness, namely commercial success, licensing, industry recognition, and the existence of a long-felt need.  I explained during oral argument on the motion that I was not inclined to resolve the issue on summary judgment, noting that the argument sounded more like a motion *in limine*, but I ultimately granted P&S's motion that Leviton had not put forward indicia of nonobviousness that would rebut a prima facie case of obviousness.  I subsequently denied Leviton's motion for reconsideration on this issue and then, relying on the summary judgment order, precluded Leviton from presenting evidence of these secondary considerations at trial. Because Leviton was not permitted to introduce such evidence, the jury was not instructed as to the nature of secondary considerations evidence and how it may be considered in determining whether the claims at issue were obvious.

8

The decision to keep this evidence from the factfinder was error on my part. A more careful and thorough review of the relevant case law convinces me that my *in limine* ruling was unprecedented. P&S has not identified any case in which the court precluded such evidence from the jury's consideration of obviousness due to a lack of nexus.[7] Rather, the case law demonstrates that a failure to establish the required nexus goes to the weight afforded to the evidence in the final determination of obviousness, not its admissibility.[8] See, e.g., Fox Factory, Inc. v. SRAM, LLC, 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("In order to accord substantial weight to secondary considerations in an obviousness analysis, the evidence of secondary considerations must have a 'nexus' to the claims . . . .") (quotation marks omitted); In re GPAC Inc., 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("To the extent that the patentee demonstrates the required nexus, his objective evidence of nonobviousness will be accorded more or less weight."); Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333, 1344 (Fed. Cir. 2013) (secondary indicia insufficient to overcome evidence that claims were invalid for obviousness); Pfizer Inc. v. Teva Pharms. USA, Inc., 460 F. Supp. 2d 659, 664 (D.N.J. 2006) ("The Federal Circuit has not found that the lack of such nexus evidence warrants preclusion. In such cases,

---

[7] As described above, although the determination of obviousness is a legal conclusion, it is "based on factual findings as to (1) the scope and content of the prior art, (2) the level of ordinary skill in the prior art, (3) the differences between the claimed invention and the prior act, and (4) any relevant secondary considerations." Infosint, S.A., 718 F. Supp. 2d at 448-49 (citation omitted); see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1356 (Fed. Cir. 2013) ("Objective evidence of secondary considerations of patentability are fact determinations which we review for substantial evidence.").

[8] Although one case cited by P&S suggests that a lack of nexus may be related to admissibility by stating that "if the commercial success is due to an unclaimed feature of the device, the commercial success is *irrelevant*," see Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006) (emphasis added), that case did not concern admissibility. Rather, the evidence was fully considered by the court in making a final determination of obviousness on summary judgment. Further, the cases it cited for that proposition similarly do not implicate the jury's consideration of indicia of nonobviousness, but rather discuss the nexus requirement in terms of burden shifting and the weight to be afforded to the evidence in the final obviousness determination. See Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1377 (Fed. Cir. 2000); J.T. Eaton & Co. v. Atl. Paste & Glue Co., 106 F.3d 1563, 1572 (Fed. Cir. 1997).

courts simply accord little weight to the . . . evidence; they do not preclude its admission altogether.").[9]

In fact, the Federal Circuit "has repeatedly stressed that objective considerations of non-obviousness must be considered in *every* case." WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1328 (Fed. Cir. 2016). This is because such evidence "may often be the most probative and cogent" of nonobviousness in the record. Stratoflex Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed. Cir. 1983). Consequently, "when secondary considerations are present, though they are not always dispositive, it is error not to consider them." In re Huai-Hung Kao, 639 F.3d 1057, 1067 (Fed. Cir. 2011); see also Stratoflex, 713 F.2d at 1539 ("Enroute to a conclusion on obviousness, a court must not stop until all pieces of evidence on that issue have been fully considered and each has been given its appropriate weight. . . . The relevant evidence on the obviousness-nonobviousness issue . . . includes evidence on what has now been called 'secondary considerations.' It is error to exclude that evidence from consideration.").

The Court's rulings encroached into the province of the fact-finder, for the jury should have been the one to decide whether there was a sufficient nexus between the proffered evidence and the claims of the '124 patent to warrant affording any weight to that evidence. The Federal Circuit has cautioned that "[q]uestions of nexus are highly fact-dependent and, … it is within the province of the fact-finder to resolve these factual disputes regarding whether a nexus exists between commercial success of the product and its patented features, and to determine the probative value of the evidence and secondary considerations." WBIP, 829 F.3d at 1331

---

[9] The Pfizer court stated that it might consider precluding such evidence to conserve time and resources during a bench trial if it were "convinced that there was no evidence of nexus, and that the . . . evidence was of no significance at all," Pfizer, 460 F. Supp. 2d at 664, but I did not find that Leviton's evidence was of no significance and, more importantly, the case here did not proceed as a bench trial.

(quotation marks omitted); see also Navico Inc. v. Int'l Trade Comm'n, 696 F. App'x 989, 999-1000 (Fed. Cir. 2017) ("A fact finder must consider all evidence relating to obviousness before finding a patent invalid on those grounds.  Objective indicia of non-obviousness are vital to an obviousness determination and must be considered, not ignored as a mere afterthought.") (quotation marks omitted).  At summary judgment, I found that there was no nexus between the claims at issue and Leviton's secondary considerations evidence because the claims asserted here involve only two of the three elements of the reverse-wiring protection: the mechanical trip mechanism and separating the face conductor from the downstream load conductor, but not the reset lockout mechanism.  I concluded that although the "isolated conductors are a necessary component" of commercial success, licensing, and long-felt need, they were not "sufficient" for a nexus.  This analysis should have been performed by the jury.  See WBIP, 829 F.3d at 1332 (stating that patentees need not "prove that objective evidence is tied to a specific claim element – and only that claim element" and that the factual disputes regarding a nexus and the probative value of the evidence were properly resolved by the jury).  Whether a sufficient nexus exists and thus how much, if any, weight to afford Leviton's evidence was a factual issue for the jury to decide, not for the Court to determine prematurely.  See, e.g., CIVIX-DDI, LLC v. Hotels.com, L.P., No. 05 C 6869, 2012 WL 6591684, at *5-6 (N.D. Ill. Dec. 18, 2012); EBS Auto. Servs. v. Illinois Tool Works, Inc., No. 09-cv-996, 2011 WL 4021323, at *19 (S.D. Cal. Sept. 12, 2011); Uniloc USA, Inc. v. Microsoft Corp., 632 F. Supp. 2d 147, 158 (D.R.I. 2009).

The Court's rulings constituted error and unfairly prejudiced Leviton.  At trial, for example, P&S introduced the NEMA Guide's discussion on reverse wiring to argue the claims were obvious.  But the Court's ruling kept Leviton from showing a nine-year gap between the Guide's recognition of the problem and the filing of the patent's application.  This was evidence

11

of secondary considerations of nonobviousness, namely, long-felt need.  See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1368 (Fed. Cir. 2013).  Further, even after P&S argued that the '124 patent was obvious based on P&S's own patent, combined with the knowledge of a POSA, Leviton was precluded from arguing and having the jury instructed that Marcou's failure to resolve the problem as the '124 patent ultimately did was crucial evidence undermining the theory of obviousness.  Advanced Displays Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1285 (Fed. Cir. 2000) (evidence of failed attempts by others supports a finding that the patented invention was not obvious).  Ultimately, the jury rendered a decision on obviousness without any instruction on or consideration of secondary indicia, even though such evidence must at least be considered in every case.

Leviton is therefore entitled to a new trial in which it is permitted to introduce evidence of secondary considerations of nonobviousness, including, but not limited to: (1) the failures of others to solve the reverse wiring problem before Leviton's creation, (2) how the industry quickly shifted to adopt and license Leviton's approach, and (3) the commercial success of Leviton's GFCIs that embodied this particular technology.[10]

### III.    Leviton's Motion for Attorneys' Fees and Costs

Leviton seeks attorneys' fees and costs, raising several concerns about the conduct of P&S in litigating this case.  First, to simplify the case and narrow the issues for trial, the parties entered into a stipulation in which the parties agreed that, should P&S fail to prove invalidity of the '124 patent, it would be in breach of the Settlement and Licensing Agreement.  If the jury found that Leviton's patent was valid, the parties stipulated that Leviton would be entitled to an

---

[10] Because I am granting Leviton's motion for a new trial based on the preclusion of its evidence on secondary considerations, I do not consider the alternative grounds raised in the motion.

agreed upon amount of damages.  But after the parties agreed to simplify the issues for trial, P&S

moved to strike the jury on that basis.  I ultimately denied the motion.[11]

Second, a day before trial, Leviton was surprised to learn that P&S was changing its

theory for trial.  Specifically, throughout the case P&S contended the '124 patent was invalid

because its claims were both anticipated and obvious.  But after P&S disclosed its proposed

demonstrative exhibits, Leviton quickly realized that none of the slides spoke to anticipation.

Counsel for Leviton sought to verify whether P&S was dropping this potential line of attack, but

P&S's counsel declined to give a straight answer, responding that he did not "understand

Leviton's confusion."  It seems apparent that P&S sought a competitive advantage by remaining

silent on this issue, even up to the point of trial.  Viewing this conduct in conjunction with P&S's

prior stipulation and later motion to strike the jury, one might conclude that P&S's behavior

amounted to gamesmanship.

That being said, I cannot find that P&S's decision to initially assert an anticipation

defense was in bad faith and not colorable from its inception.  By extension, its decision to

jettison such a theory after a ruling by the Court does not warrant sanctions.  The Court accepts

P&S's assertion that, after the Court denied P&S's motion to strike the jury, P&S re-evaluated

the case and decided to simplify an already complicated and technical patent case for the jury's

convenience.

As the Federal Circuit has explained, withdrawing claims or defenses is not in itself

litigation misconduct giving rise to sanctions.  Claims "frequently are dropped and amended

during the course of a lawsuit," and "sound judicial policy encourages a narrowing of issues."

Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 694 (Fed. Cir. 2001).  Leviton

---

[11] Leviton Mfg. Co., Inc. v. Pass & Seymour, Inc., 425 F. Supp. 3d 165 (E.D.N.Y. 2019).

has failed to show that P&S's decision to narrow the scope of the trial by abandoning its theory of invalidity premised on anticipation was "exceptional or vexatious as compared to normal litigation." Id.; see Chrimar Holding Co., LLC v. ALE USA Inc., 732 F. App'x 876, 891 (Fed. Cir. 2018) (affirming district court determination that defendant's conduct in "press[ing] a large number of defenses and counterclaims for years, only to drop most of them (*e.g.*, … some invalidity grounds) late in the litigation, even during trial" fell "within the range of ordinary practices involving the narrowing of claims for trial").

Leviton's remaining arguments are not compelling.  Leviton contends fees should be awarded based on P&S's positions at summary judgment and pre-trial that sought to reopen or were contrary to the Court's claim construction ruling; P&S maintaining and then dropping a different invalidity theory; P&S's late-brought counterclaim; and P&S maintaining and then dropping a reduced royalty theory.  But I do not find that P&S's positions were completely without merit or made in bad faith.  Although I declined to consider P&S's proposed new constructions, district courts have the discretion to reopen claim construction to revisit or alter their prior interpretations.  See Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002).  Further, I rejected P&S's efforts that Leviton challenges here in rulings on summary judgment and pre-trial motions by finding waiver, an appropriate sanction for P&S's failure to comply with my scheduling order by raising these issues earlier.  This case was hard-fought on both sides, and I do not find that P&S's litigation conduct was so vexatious as to warrant sanctions.

## IV.    P&S's Application for Taxation of Costs

P&S's motion for costs is denied without prejudice.  Because I have ordered a new trial, it is not a prevailing party under Fed. R. Civ. P. 54(d).  See White v. American Airlines, Inc., 915 F.2d 1414, 1425 (10th Cir. 1990); see also Givens v. Lederle, 556 F.2d 1341, 1346 (5th Cir.

1977) (awarding costs from first trial to plaintiff who prevailed in the second trial even though the first trial resulted in a verdict for defendant).

**CONCLUSION**

Leviton's motion for judgment as a matter of law and motion for attorneys' fees are denied, and its motion for a new trial is granted.  P&S's motion for costs is denied without prejudice.  The retrial will be scheduled by separate order.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 27, 2021